IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JAMES L. VAN ARKEL, | |
| Plaintiff, | |
| | **No. 4:03-cv-40490** |
| vs. | |
| | **ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| WARREN COUNTY; WARREN COUNTY BOARD OF SUPERVISORS; WARREN COUNTY AUDITOR; and TRACI VANDERLINDEN, in her Individual and Official Capacities, | |
| Defendants. | |

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (Clerk's No. 31) and Defendant's Motion for Summary Judgment (Clerk's No. 30, 33).  Attorney for Plaintiff is Charles Gribble; attorneys for Defendant are Helen C. Adams and Bridget R. Penick.  The Court heard oral arguments on the motions on March 10, 2005, and now considers the motion fully submitted and ready for final disposition.

The present litigation might factually be regarded as a routine case of alleged discrimination in employment.  However, the circumstances of employment by a government body, the creative arguments asserted on behalf of the Plaintiff, and core disputes about the appropriate legal process to be followed, require the Court to enlarge the analytical process in this case.

# PROCEDURAL HISTORY

Plaintiff, James L. Van Arkel ("Van Arkel"), commenced this action against Warren County ("the County"), Warren County Board of Supervisors ("the Board"), Warren County Auditor ("the Auditor"), and Traci VanderLinden ("VanderLinden")[1] (collectively, "the Defendants") in this Court on September 2, 2003.  Van Arkel's Complaint asserts six counts against Defendants.  Jurisdiction is proper pursuant to 28 U.S.C. § 1331, the federal question statute, as this case arises in part under 42 U.S.C. § 1983, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2.[2]  The Court has jurisdiction over Plaintiff's state law claims pursuant to the Court's pendant claim jurisdiction under 28 U.S.C. § 1367(a).[3]

The lawsuit arises out of alleged age and gender discrimination based in the termination of Plaintiff's employment with Warren County, Iowa.  Plaintiff also alleges

---

[1] VanderLinden was sued both individually and in her official capacity, though Plaintiff's Complaint limits her individual liability to the discrimination claim brought under section 1983.

[2] Plaintiff asserts claims for age and/or gender discrimination under section 1983 (Claim I), for age discrimination under the ADEA (Claim II), and for gender discrimination under Title VII (Claim III) in his Second Amended Complaint (Clerk's No. 27) filed August 27, 2004.

[3] Plaintiff asserts a wage payment claim under Iowa Code Chapter 91A (Count IV), a breach of contract claim (Count V), and a claim based on Iowa Code Chapter 331 (Count VI) in his Second Amended Complaint.

2

a breach of contract and violation of Iowa statutes as a result of his termination.  On December 14, 2004, Plaintiff filed a motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56; meanwhile, on December 15, 2004, Defendants filed a motion for summary judgment, also pursuant to Rule 56.  Defendants seek summary judgment on all claims asserted by Van Arkel in his Complaint, while Plaintiff just seeks summary judgment on the final two counts of his Complaint, i.e., the breach of contract claim and the claim made under Iowa Code Chapter 331.  Both parties have had more than sufficient time to respond to the pending motions.[4]

## BACKGROUND FACTS

Van Arkel was hired by Warren County in September 1991.  He was originally hired by then-Warren County Auditor Beverly Dickerson ("Dickerson") to serve as Budget Director in the Auditor's office.  Van Arkel signed an agreement provided by Dickerson, which contained the following language relevant to this action:

---

[4] Despite a rapidly approaching trial date, both parties repeatedly requested extensions of time to respond to the other party's respective motions.  While the Court hesitantly granted these motions (including three extensions for Plaintiff to resist, two extensions for Defendants to resist, and one extension each for reply motions), the repeated requests resulted in this matter becoming ready less than two months before the scheduled trial date, with the Court unable to schedule a hearing on the matter until approximately one month prior to the scheduled trial date.  The hearing was followed by Plaintiff's motion for consideration of additional evidence, and the necessary time for response by the Defendants.  The Court is sympathetic to the demands and pressures on litigators, and appreciates precise compliance with a case schedule is not always reasonable.  However, these delays impact the Court's ability to complete its work without delaying a scheduled trial, or without rendering a decision so near the trial date that counsel may be forced into ultimately unnecessary trial preparation.

> 1.  The Employee shall be appointed by the Auditor and approved by the
> Warren County Board of Supervisors pursuant to Chapter 331, Code of
> Iowa, 1991.  Except as other wise [sic] provided by State law, removal
> from this position shall be subject to the specific provisions of the Warren
> County Personnel Policy.
>
> * * *
>
> THIS AGREEMENT, may be terminated by serving written notice upon
> the other party by May 1, of the year in which this Agreement expires.
> Such termination shall be effective July 1, of that year.  Unless terminated
> by the time and manner setforth [sic] above or in item #2, this Agreement
> shall be deemed in effect from July 1, of the year notice could have been
> served, through June 30, of the following year.

Thereafter, the Board approved Van Arkel by resolution as County Budget Director as

recommended by Dickerson.  That Resolution, numbered 91-214, was adopted

September 3, 1991, and provided as follows:

> Be it resolved that, upon the recommendation of Beverly Dickerson,
> Warren County Auditor, James Van Arkel will be hired as a CPA effective
> September 1, 1991 at a bi-weekly salary of $1368.

Van Arkel then began working as a member of Dickerson's staff, which in 1991 con-

sisted of seven women and Van Arkel.

In December 1996, the Board passed Resolution 96-495, consolidating the

position of County Budget Director with the Assistant to the Board of Supervisors.[5]

Van Arkel was appointed to the consolidated position and thereafter assumed the duties

of the Assistant to the Board of Supervisors in addition to his regular duties as Budget

---

[5] The resolution states, "BE IT RESOLVED THAT, the position of County
Budget Director is to be consolidated with the Assistant to the Board of Supervisors
(formerly Executive Assistant).  Jim Van Arkel is hereby appointed as such effective
December 9, 1996 to be re-evaluated July 1, 1997."

4

Director.  Following the six-month trial period, Van Arkel remained in the consolidated position throughout the course of his employment with the County.  According to Van Arkel's own estimation, approximately 80 percent of his time was devoted to the assistant's position and 20 percent to the budget director position, though he remained an employee of the Auditor's office, as his salary came out of the budget for that office.  Traci VanderLinden[6] became County Auditor in 1998.

The parties' accounts of Van Arkel's remaining tenure with the County differ. Van Arkel points out that he was presented with the Employee of the Year Award in February 1998,[7] and that during the final years of his employment he received ratings exceeding "Competent Performance", and in fact was rated "Very Good" or "Out-standing" in most categories by Defendants during his yearly performance evaluations.[8] In 2001, Van Arkel received the highest ratings of all County employees evaluated by the Board.  In addition, neither VanderLinden nor the Board ever issued Van Arkel a written reprimand nor was he ever suspended during the course of his employment.

---

[6] VanderLinden is three months older than Van Arkel.

[7] This was awarded by Dickerson while she was still County Auditor.

[8] Van Arkel's performance evaluations were completed by the three members of the Board of Supervisors.  His immediate supervisor of his Budget Director duties, VanderLinden, had no input into those evaluations though Van Arkel contends she could have spoken up while they were being discussed during Board meetings. VanderLinden disagrees, asserting her presence at the meetings was as an observer and not an active participant.

Despite this seemingly strong record, Van Arkel's employment was marred by issues that eventually led to his termination. VanderLinden states she was repeatedly approached by various County department heads regarding Van Arkel. The department heads presented VanderLinden with complaints that Van Arkel was usurping the Board's power and unilaterally making changes to their departments' budgets without the knowledge of either VanderLinden or the Board. Additionally, VanderLinden was becoming increasingly frustrated with not knowing where Van Arkel was during any given day. Also, during meetings of the Board, certain Board members instructed Van Arkel to improve his communication with department heads and inform his supervisors of his daily whereabouts.[9] Despite this guidance, VanderLinden was still approached by multiple department heads with complaints about Van Arkel. These complaints resulted in at least two meetings of department heads to discuss those issues.[10]

In March 2002, after receiving additional complaints, VanderLinden concluded that termination of Van Arkel's employment was appropriate. On April 15, 2002, VanderLinden informed Van Arkel of this decision. VanderLinden hand-delivered a letter to Van Arkel stating he was being terminated for "irreconcilable differences in

---

[9] This information comes from VanderLinden, who, in her position as County Auditor, attended nearly every meeting of the Board of Supervisors and took minutes of the meetings.

[10] The first meeting occurred in February 2001, while the second took place in July 2001.

6

management philosophies."  The letter further provided the County would pay Van Arkel a two-week severance package along with any unused vacation, resulting in payment of his salary and benefits through the April 26, 2002, pay period.  On April 23, 2002, the Board passed Resolution 02-215 "acknowledging" the termination of Van Arkel as County Budget Director.

While Van Arkel was initially paid two weeks severance and all unused vacation, the County later paid Van Arkel an additional $14,379, which constituted payment of his salary through June 30, 2002.  The County claims this was done out of an abundance of caution after VanderLinden became aware of the agreement Van Arkel had entered into with Dickerson, as the agreement had an automatic renewal provision providing that any termination would be effective July 1 of the year notice was given provided notice was given before May 1.

According to the County, Van Arkel has not been replaced as Assistant to the Board, as a majority of the Board concluded the position was no longer necessary. With respect to the budget director position, VanderLinden performed the budget duties herself for six months.  She then advertised for and filled a new position, Warren County Budget Assistant, to perform many of the duties previously done by Van Arkel as Budget Director.  After interviewing four candidates, two women and two men, VanderLinden hired Jennifer Sease ("Sease"), then age 26, because VanderLinden determined she had the most relevant experience of all the finalists concerning budgets in the public sector.

On December 9, 2002, Van Arkel filed a charge of discrimination alleging age and gender discrimination with the Equal Employment Opportunity Commission ("EEOC"),[11] and Van Arkel was issued a Notice of Right to Sue on June 10, 2003. This litigation ensued, wherein Plaintiff has asserted six causes of action against Defendants stemming from his termination from County employment.

## ANALYSIS

Both Plaintiff and Defendants have filed motions for summary judgment pursuant to Rule 56.  Van Arkel seeks summary judgment only on two counts of his Complaint, and only on the issue of liability on those two counts.  Meanwhile, Defendants seek summary judgment on all claims asserted by Van Arkel against them.  The parties' contentions will be discussed *seriatim.*

**A.    Standard for Summary Judgment**

"[C]laims lacking merit may be dealt with through summary judgment under Rule 56."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).  Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be rendered

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

---

[11] The EEOC complaint was filed within the statutorily prescribed 180 days of the act of which Van Arkel complains.

To avoid summary judgment, the nonmoving party must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial.  See Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Wilson v. Southwestern Bell Tel. Co., 55 F.3d 399, 405 (8th Cir. 1995).  Relevant to the present action, "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

The nonmoving party must go beyond the pleadings, and by affidavits, depositions, answers to interrogatories, and admissions on file, designate "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; see also Landon v. Northwest Airlines, Inc., 72 F.3d 620, 624 (8th Cir. 1995) (finding that in employment discrimination cases, "the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action.").  The Court must view all of the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citations omitted); Rifkin v. McDonnell Douglas Corp., 78 F.3d 1277, 1280 (8th Cir. 1996); Marts v. Xerox, Inc., 77 F.3d 1109, 1112 (8th Cir. 1996).  While the quantum of proof that must be produced to avoid summary judgment is not precisely measurable, it must

be enough evidence for a reasonable jury to return a verdict in favor of the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The Court recognizes that caution is necessary in approaching summary judgment in employment discrimination cases.  See Keathley v. Ameritech Corp., 187 F.3d 915, 919 (8th Cir. 1999); Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994); see also Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999) ("Because employment discrimination cases frequently turn on inferences rather than direct evidence, the court must be particularly deferential to the party opposing summary judgment.").  Notwithstanding this consideration, summary judgment "is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim."  Whitley v. Peer Review Sys., Inc., 221 F.3d 1053, 1055 (8th Cir. 2000); see also Duffy v. Wolle, 123 F.3d 1026, 1033 (8th Cir. 1997) ("While 'summary judgment should seldom be granted in employment discrimination cases, summary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her case.'") (quoting Helfter v. United Parcel Serv., Inc., 115 F.3d 613, 615-16 (8th Cir. 1997)).

**B.   Plaintiff's Motion for Partial Summary Judgment**

Plaintiff moves for partial summary judgment on counts five and six of his Complaint, i.e., on the claims for breach of contract and for violation of the provisions of Iowa Code Chapter 331.  He contends that Defendants cannot demonstrate any genuine issues of material fact on these claims.  Accordingly, Van Arkel moves for

10

summary judgment on the issue of liability for these claims but reserves the issue of damages for trial.  Defendants resist Plaintiff's motion and, as will be discussed infra,[12] actually move for judgment as a matter of law in their favor on these two claims.

As a preliminary matter, Van Arkel claims that Defendants have heretofore failed to remove him from his position as County Budget Director for the following reasons: (1) Defendants failed to terminate Van Arkel pursuant to the terms of the written employment agreement; (2) Defendants failed to comply with the requirements of Iowa Code Chapter 331; and (3) Defendants failed to terminate Van Arkel "for cause" as required by the Warren County Personnel Policies.  Van Arkel asserts both Chapter 331 and the personnel policy are incorporated by reference into the employment agreement.  Van Arkle further maintains that Defendants did not even attempt to remove him from his position as Assistant to the Board of Supervisors.

### 1.    Breach of Contract Claim

Under Iowa law, to prove a breach of contract claim, Plaintiff must prove the following:  (1) an employment contract existed between the parties; (2) the terms and conditions of the contract; (3) Plaintiff fulfilled the terms and conditions of the contract; (4) Defendants breached the contract in some manner; and (5) Plaintiff suffered damages as a result of the breach.  Kish v. Iowa Cent. Cmty. Coll., 142 F. Supp. 2d 1084, 1093 (N.D. Iowa 2001).  To demonstrate that an employment contract existed between the parties, Plaintiff must show that the parties were capable of contracting,

---

[12] See discussion infra, at sections C.3 and C.4.

there was an offer and acceptance, and there was consideration.  See Magnusson

Agency v. Public Entity Nat'l Co., 560 N.W.2d 20, 25 (Iowa 1997) (listing these items

as the first three elements of a breach of contract claim) (citing Iowa Civ. Jury Instr.

2400.1).  In other words, "[a] party breaches a contract when, without legal excuse, it

fails to perform any promise which forms a whole or a part of the contract."  Molo Oil

Co. v. River City Ford Truck Sales, Inc., 578 N.W.2d 222, 224 (Iowa 1998) (citing

Magnusson Agency, 560 N.W.2d at 27).

       As to the existence of a contract, "[t]he only required elements of a binding con-

tract are mutual assent to the contractual terms manifested by an offer and accep-

tance."  In re Guardianship & Conservatorship of Price, 571 N.W.2d 214, 216 (Iowa

Ct. App. 1997) (citing Kristerin Dev. Co. v. Granson Inv., 394 N.W.2d 325, 331 (Iowa

1986)).  An offer is determined by whether it induces a reasonable belief in the recipi-

ent that the sender will be bound if the recipient accepts.  Heartland Express, Inc. v.

Terry, 631 N.W.2d 260, 268 (Iowa 2001) (citing Anderson v. Douglas & Lomason

Co., 540 N.W.2d 277, 286 (Iowa 1995)).  An acceptance is "'a manifestation of assent

to terms thereof made by the offeree in a manner invited or required by the offer.'"  Id.

at 270 (quoting Restatement (Second) of Contracts § 50).  Van Arkel asserts that he

had a reasonable belief that by signing the employment agreement, both he and the

County Auditor would be bound by the contract, and he accepted the offer of employ-

ment by signing the agreement and beginning his employment with the Auditor's office.

       There must also be consideration for a contract to exist, which requires a benefit

to the promisor or a detriment to the promisee.  Magnusson Agency, 560 N.W.2d at

12

26-27.  Van Arkel contends the "bargained for exchange" in the instant case was Van Arkel's agreement to perform the duties of County Budget Director in exchange for the compensation provided by the County.

Finally, the parties to a contract must have the capacity to contract.  Id. at 25.  A person is capable of contracting unless he or she lacked sufficient mental capacity. Iowa Civ. Jury Instr. 2400.0 (2004).  Van Arkel asserts that both he and Dickerson had the requisite mental capacity to sign the employment agreement on September 1, 1991, and therefore this first element is met.

The second element of Plaintiff's breach of contract claim requires proof of the terms and conditions of the contract.  Molo Oil Co., 578 N.W.2d at 224.  Construction of a contract is always a matter of law for the Court.  Owen Constr. Co. v. Iowa State Dep't of Transp., 274 N.W.2d 304, 306 (Iowa 1979).  Van Arkel contends the relevant terms and conditions of the contract are that he be appointed and approved subject to Chapter 331 of the Iowa Code and that he only be removed from his position subject to the provisions of Chapter 331 and the County personnel policy.

On the third element, Van Arkel asserts he has no outstanding performance obligations.  He contends that he performed as required in his position as County Budget Director.

As to the next element, Van Arkel must prove Defendants breached the contract. See Molo Oil Co., 578 N.W.2d at 224.  In other words, Van Arkel must present undis-puted evidence that Defendants failed to comply with the terms of the 1991 employ-ment agreement.  He contends that Defendants breached the contract in the manner in

which they attempted to terminate his employment with the County.  He asserts that the County did not comply with Chapter 331, the provisions of the personnel policy, or the terms of the contract in terminating his employment April 15, 2002.[13]

In resistance to Plaintiff's assertions on the breach of contract claim, Defendants initially contend the claim cannot stand because none of the named Defendants were parties to the agreement at issue.  The only agreement ever signed by Van Arkel was with Dickerson, who retired as County Auditor in 1998.  Defendants assert that neither the County, the Board, nor VanderLinden ever ratified the agreement.  Further, while Van Arkel correctly notes Dickerson had sufficient mental capacity to enter into a contract, Defendants assert he provides no authority for the proposition that Dickerson

_____

[13] The final listed element of a breach of contract claim is that Plaintiff suffered damages as a result of the breach.  See Kish, 142 F. Supp. 2d at 1093; Magnusson Agency, 560 N.W.2d at 25.  Because Plaintiff is seeking summary judgment solely as to liability and not as to damages, he asserts the element requiring proof of damages need not be discussed.

However, proof of damages is an *element* of a breach of contract claim.  Without proof of damages, no claim exists, regardless of whether there was an actual breach.  Becker v. Central States Health & Life Co. of Omaha, 431 N.W.2d 354, 356 (Iowa 1988) ("It is a fundamental principle of law that to maintain an action for breach of contract, the plaintiff must show the alleged breach caused injury . . . .  This is because causation is an essential element of liability in contract actions . . . ."), overruled on other grounds, Johnston Equip. Corp. of Iowa v. Industrial Indem., 489 N.W.2d 13, 16 (Iowa 1992).  Plaintiff must at least show he sustained some damage of the breach, though he may reserve the determination of the amount of damage for trial.

By failing to discuss this element, the Court finds it difficult to determine whether Plaintiff even has a valid claim for breach of contract.  For purposes of this motion, however, the Court will assume that Plaintiff has shown damages exist beyond the severance provided, with those damages being payment owed under the employment agreement.  This seems to be the inherent conclusion as to what constitutes the injury sustained from Defendants' alleged breach.

14

could bind Warren County or future County Auditors for the duration of Van Arkel's employment with the County.

Counties are "creatures of the legislature [and they have] such powers to contract and only such powers as the legislature grants them." Madrid Lumber Co. v. Boone County, 121 N.W.2d 523, 525 (Iowa 1963). To this end, the Iowa Code provides that the "power of a county is vested in the board, and a duty of a county shall be performed by or under the direction of the board except as otherwise provided by law." Iowa Code § 331.301(2). Moreover, a board shall exercise its power "*only by* the passage of a motion, a resolution, an amendment, or an ordinance." Iowa Code § 331.302(1) (emphasis added).

Defendants contend there is no statutory support for Plaintiff's assumption that Dickerson could bind the County or VanderLinden by entering into the agreement at issue. Defendants further argue Plaintiff has not established Dickerson was acting under the direction of the Board when she signed the agreement. Finally, while the Board did approve Van Arkel's employment by resolution, Defendants argue it never ratified the terms of the agreement as the written agreement appears nowhere in the resolution.

In fact, neither a single member of the Board absent full Board ratification, Greusel v. O'Brien County, 273 N.W. 853, 854 (Iowa 1937) (affirming directed verdict in favor of county on breach of contract claim and noting "[a] single member of a board of supervisors has no power to bind the board or the county, unless specifically authorized to act for the whole board or unless the agreement made by him for the

15

county is approved or ratified by the board"), nor a county auditor may bind the county.  <u>Fouke v. Jackson County</u>, 51 N.W. 71, 72-73 (Iowa 1892) (holding that county auditor did not have the authority to bind the county because "it is the board alone, acting officially, that can bind the county by an express contract").  Indeed, such power to bind the county is found only in the Board.  Iowa Code § 331.302(1); <u>see also</u> <u>City of Akron v. Akron Westfield Cmty. Sch. Dist.</u>, 659 N.W.2d 223 (Iowa 2003) (affirming summary judgment in favor of city and finding any contract entered without formal motion, resolution, amendment, or ordinance is void).

Accordingly, Defendants assert the only parties arguably bound by the agreement are Van Arkel and Dickerson.  In any event, Defendants contend that the contract is void absent a ratifying resolution.  While this appears harsh, Defendants point out that "[t]hose who contract with a municipality are charged with notice of the limits on the municipality's authority."  <u>City of Akron</u>, 659 N.W.2d at 225.[14]  Defendants maintain Van Arkel's breach of contract claim must be dismissed on this basis.

In Defendants' motion, they added the argument that the Board's 1996 resolution consolidating the Assistant to the Board position with the Budget Director position

---

[14] The rationale relied upon by the court in making this finding is that "it would be a bad idea to frustrate those [formal statutory] requirements, either – as here – inadvertently by the unwary, or – in another case – deliberately by the unscrupulous."  <u>City of Akron</u>, 659 N.W.2d at 225-26.  While the <u>City of Akron</u> decision related to claims made against a municipality, Defendants argue the same rationale applies in the present action because the statutory provisions regarding the powers of municipalities and counties are nearly identical.  <u>Compare</u> Iowa Code § 364.3(1) (providing that city council shall exercise a power only by motion, resolution, amendment or ordinance) <u>with</u> Iowa Code § 331.302(1) (providing that board of supervisors shall exercise a power only by motion, resolution, amendment, or ordinance).

provided notice of the termination of the agreement regarding the Budget Officer position by terminating the previous position and appointing Van Arkel to the new, consolidated position.  Van Arkel never objected to this appointment and worked in the consolidated position until his termination.  In short, Defendants assert the resolution of consolidation effectively terminated and superceded the agreement.

Defendants further contend Plaintiff's breach of contract claim must be dismissed because Van Arkel is unable to demonstrate Defendants breached the agreement, assuming *arguendo* that such a contract is valid and binding on Defendants. Defendants contend they did not breach the agreement, under any of the scenarios asserted by Van Arkel.

Van Arkel counters that the Auditor does have the power to contract, with approval from the Board, based on Iowa Code §§ 331.505 and 331.903.  He asserts the agreement notes the necessity of Board approval, and that the agreement further makes plain the County's conformance with Chapter 331 by explicitly referencing this section as part of its terms.

Plaintiff has, however, expressly denied being an assistant, deputy, or clerk, i.e., those positions referenced in sections 331.505 and 331.903.  As a result, the Court finds serious problems with Plaintiff's reliance on these sections to support his assertion that Auditor Dickerson could bind the County and her successor.

Van Arkel next suggests the Court compare the language used in the agreement with that of the resolution affirming his employment.  Van Arkel contends that because the Board in its resolution uses the same language as the agreement, e.g., that he is

17

hired as budget director for the amount listed in the agreement, and because the resolution states it is acting on Dickerson's recommendations, the Board in effect is ratifying the employment agreement between Van Arkel and Dickerson.

Following oral argument on the matter, Plaintiff did move for consideration of additional evidence in the form of an affidavit provided Don Van Rwyswk, a member of the Warren County Board of Supervisors at the time Van Arkel was hired. Plaintiff requests the Court consider the material as indicating the Board's knowledge and intent at the time of the resolution approving Van Arkel's hiring by the County, though Plaintiff maintains the language of the resolution is sufficient to show the Board's ratification of such.

In his affidavit, Van Rwyswk states that on September 3, 1991, the Board was presented with an employment contract signed by Van Arkel and then-Auditor Dickerson. According to Van Rwyswk, the Board reviewed and approved the contract, and then he moved to adopt the resolution to hire Van Arkel. Van Rwyswk then noted it was unanimously passed to hire Van Arkel at the bi-weekly salary stated in the employment contract.

In response, Defendants first argue the Court should not allow the additional evidence at this late date. Plaintiff should have been aware he would be required to show Board ratification for the employment contract to be binding, and was on notice of this issue at least since Defendants' resistance to Plaintiff's motion, as Defendants' brief expressly raised the issue. Defendants contend Van Arkel has offered no legitimate explanation for his failure to submit the evidence earlier, nor has he provided

authority that allows him to enter it at this time.  To the contrary, Defendants contend that it would be patently unfair to allow submission of this evidence, as the affiant has not been previously identified by Plaintiff as a person with knowledge of facts relevant to this case, discovery has closed, the summary judgment motions have been argued and are fully submitted, and the trial date is just a few weeks away.  See Dean v. Muscatine County, 250 F. Supp. 2d 1094, 1101 (S.D. Iowa 2003) (striking plaintiff's additional evidence in a similar circumstance, noting "[c]ounsel's untimely submission is highly prejudicial to defendants, who were then forced to submit a hurried response to plaintiff's supplement").

In the alternative, Defendants assert the material is not material to any issue before the Court.  A review of the offered affidavit merely shows that then-County Supervisor Van Rwyswk made a motion to adopt the resolution to hire Van Arkel, which was approved, but the affidavit contains no further support or evidence that the Board actually approved or ratified the contract as required by law.  The resolution itself makes no mention of the agreement, and Defendants reassert that the mere fact the salary set forth in the resolution matches that in the agreement is not proof the agreement was being ratified.[15]

Defendants assert further that if the Court does consider the affidavit, it should also consider the minutes of the Board from the September 3, 1991, meeting in their

---

[15] In fact, Defendants further note the resolution refers to his position as a "CPA", whereas the agreement refers to him as "Warren County Budget Officer". Defendants point this out to further dispel Plaintiff's arguments that the language in the resolution is identical to that in the agreement, thereby indicating ratification of the agreement by the Board.

entirety.  On multiple occasions during this meeting, the minutes demonstrate the

Board's practice when presented with an agreement for approval of adopting a resolu-

tion authorizing the chair to sign said contract.  This procedure did not take place with

regard to the Van Arkel/Dickerson agreement.  To the contrary, the minutes and actual

resolution merely indicate the Board was approving Van Arkel's hiring without any

mention whatsoever of an employment agreement.  Accordingly, Defendants assert the

evidence remains that no Board ratification of the agreement took place even if the

Board was presented with and reviewed that agreement.

The Court finds the employment agreement as applied to the County is invalid

and nonbinding as a matter of law if not approved and ratified by the Board.  While the

Court agrees that Plaintiff's post-hearing submissions should not be considered, the

Court ultimately concludes that no such ratification took place even considering the

late-filed affidavit.[16]

The Board resolution affirming Van Arkel's employment makes no mention

whatsoever of the written agreement, a conclusion not altered even considering the

---

[16] Because the Court finds no ratification even when Van Rwyswk's affidavit is
considered, the Court need not take any action to strike the material or deny Plaintiff's
motion to consider the supplemental filing.  The Court does note, however, that Plain-
tiff had more than sufficient notice that Board ratification would be a key issue on his
breach of contract claim, either through his own research in support of his summary
judgment motion or, at the least, through Defendants' resistance which specifically
cited the relevant case law requiring Board approval and ratification for contracts to be
binding on the County.  Accordingly, there should have been no surprise when this
became an issue at oral argument.  The Court will not normally indulge such non-
expeditious filings, though in this case the result is harmless and not prejudicial to
Defendants beyond the task and expense of preparing an additional resistance.

belatedly submitted evidence.  The fact that the resolution uses the same or similar language is of no consequence, and is actually reasonable considering the Board was acting upon the recommendations of Dickerson, the drafter of the employment agreement.  The "same language" argument cannot overcome the lack of express language, and the Court will not draw conclusions of intent based on such dubious inferences, nor can one individual's recollection of events overcome the fact that such approval and ratification is not evidenced by either the Board's resolution or the minutes of the September 3, 1991, meeting.  The proper operation of a public entity, and the legal ramifications of specific acts, must be evidenced by more than the general recollection of a former elected official.

The Court thus finds the lack of express language referencing and ratifying the document is dispositive.  Van Arkel's employment was approved by the Board without reference to the employment agreement, which agreement was fundamentally contradictory to the provisions of the handbook and longstanding County practice.  A departure from firmly established practice must be expressly evidenced by the public record.  At bottom, Van Arkel had no valid and binding contract with the County.  This conclusion is further supported by the evidence in the record indicating that neither the current members of the Board nor the current County Auditor had any knowledge of the agreement until well after Van Arkel's termination as there was no record of any such agreement in a resolution or Board minutes.

Alternatively, even accepting that Van Arkel had a valid and binding agreement with Defendants, the Court would still be required to determine whether said agreement

21

was breached by Defendants.  As delineated above, Plaintiff asserts the agreement was breached on three bases: (1) under the terms of the agreements; (2) under Chapter 331 of the Iowa Code; and (3) under the County personnel policy.[17]

Before dealing with the second two contentions, however, the Court finds the County complied with the terms of the agreement even though it was not required to do so.  Defendants provided notice of Van Arkel's termination on April 15, 2001, and, while Plaintiff was immediately dismissed, Defendants subsequently paid Van Arkel the amount he would have received had he been employed through June 30, 2001.

In its automatic renewal provision, the agreement provides for notice by May 1 of the year in which the termination would occur, to be effective July 1 of that year. Defendants unknowingly, and fortuitously, provided the requisite notice and later paid Van Arkel all he would have received had the agreement not been renewed effective July 1, thereby fulfilling the express terms of the contract.  Thus, Plaintiff's only remaining claims must be under either Chapter 331 or the County personnel policy.

## 2.   Iowa Code Chapter 331 Claim[18]

Van Arkel first asserts the employment agreement incorporates by reference Iowa Code Chapter 331.  "Under the doctrine of incorporation, one document becomes part of another separate document simply by reference as if the former is fully set out

[17] Because the final two bases may form the basis of separate claims, either for a statutory violation or as an exception to at-will employment, the Court will continue with its analysis of the parties' contentions on these issues.

[18] Plaintiff's Iowa Code Chapter 331 claim is essentially subsumed in his breach of contract claim.  Plaintiff did, however, bring a separate, and apparently independent, claim for violation of Chapter 331, and the Court now addresses the separate claim.

22

in the latter." <u>Hofmeyer v. Iowa Dist. Ct. for Fayette County</u>, 640 N.W.2d 225, 228 (Iowa 2001) (citing Richard A. Lord, <u>Williston on Contracts</u> § 628 (3d ed. 1961)). Incorporation by reference is a question of law to be determined by the Court. <u>Id.</u> (determining reference to Iowa Administrative Rules were incorporated by reference). Under Iowa law, to be incorporated by reference, the reference must be "clear and specific." <u>In re Estate of Kokjohn</u>, 531 N.W.2d 99, 101 (Iowa 1995).

Van Arkel contends that the employment agreement at issue in this case clearly and specifically references Chapter 331. The agreement states in relevant part, "The Employee shall be appointed by the Auditor and approved by the Warren County Board of Supervisors pursuant to Chapter 331, Code of Iowa, 1991." Van Arkel maintains that this reference is sufficient for the Court to find Chapter 331 has been incorporated by reference. <u>See</u> <u>Hofmeyer</u>, 640 N.W.2d at 229 (finding clear reference to Iowa Administrative Rules, without citation to a specific rule, was sufficient for the Administrative Rules to be incorporated by reference).

Defendants resist Van Arkel's first assertion regarding the applicability of the removal procedures of Chapter 331 under the terms of the agreement, contending the agreement does not require removal pursuant to Chapter 331. Rather, the agreement merely states the "[e]mployee shall be *appointed* by the Auditor and *approved* by the Warren County Board of Supervisors pursuant to Chapter 331," with the following sentence providing removal shall be pursuant to the Warren County Personnel Policy, except as otherwise required by state law. Thus, Defendants argue that Van Arkel's contention that a "term and condition" of the agreement is that he be removed from his

position subject to the provisions of the Warren County Personnel Policy *and Chapter 331* is clearly erroneous under the clear and express language in the agreement.

The Court finds Plaintiff's assertion that Chapter 331 is incorporated by reference by the employment agreement fails at the outset.  The Court has already determined the contract was never ratified by the Board and therefore not binding on the County.  Nevertheless, the Court finds that, even if the employment agreement constituted a binding contract, the agreement *does not* incorporate the Chapter's removal provision as the agreement only "clearly and specifically" references appointment and approval pursuant to Chapter 331.  If any portion of Chapter 331 had been incorporated by reference, it would be limited to those sections dealing with appointment and approval.

Van Arkel next asserts that even if not incorporated by reference, Chapter 331 is applicable under its own terms.  Van Arkel contends he was at least appointed to the consolidated position pursuant to Chapter 331 and must therefore be removed under the procedures delineated in the Chapter.

Van Arkel avers the relevant appointment and removal portions of Chapter 331 provide the following:

1.  The board shall appoint:

* * *

z.  Other officers and agencies as required by law.

* * *

3.  Except as otherwise provided by state law, a person appointed as provided in subsection 1 may be removed by the board by written order.  The order shall give the reasons and be filed in the office of

> the auditor, and a copy shall be sent by certified mail to the person
> removed, who upon request filed with the auditor within thirty days
> of the date of mailing the copy, shall be granted a public hearing
> before the board on all issues connected with the removal.  The
> hearing shall be held within thirty days of the date the request is filed
> unless the person removed requests a later date.

Iowa Code § 331.321.  As noted, Van Arkel argues he was appointed to the consolidated position of Assistant to the Board of Supervisors and County Budget Director pursuant to this statute in the Board's 1996 Resolution and that upon termination, Defendants failed to remove him from this position pursuant to the statutory requirements.

Specifically, Van Arkel alleges Defendants failed to send a copy of his termination by certified mail; rather, Auditor VanderLinden hand-delivered the letter to Van Arkel on April 15, 2002.  After meeting together shortly, Van Arkel was escorted to his office where he removed personal belongings and left.  Later, the Board passed resolution 02-215 acknowledging his removal from the Budget Director position, but again, this was never served upon him by certified mail.

Van Arkel next alleges the letter of termination failed to give adequate reasons for the termination.  The only explanation provided in the letter from VanderLinden was that Van Arkel's employment was being terminated due to "irreconcilable differences in management philosophies."  No further reasons were given by the Board when they acknowledged his removal, and Van Arkel testifies he has never been provided a list of reasons for his removal from office.  Van Arkel asserts the stated reason for his termination is vague and nebulous and is nothing more than a glaring generality which amounts to an unsupported allegation or conclusion.  He argues that section 331.321 is

meaningful only if the employer is required to set forth reasons understood by the employee, thereby enabling the employee opportunity to refute the allegations by witness testimony or documentation.  Van Arkel maintains the reasons for the termination that were articulated after the litigation may have been meaningful, but the *post hoc* statements were too late to comply with Chapter 331.

Likewise, Van Arkel asserts he was given no prior notice from the Auditor or the Board that his performance was deficient in any way.  Admittedly, VanderLinden never spoke with Van Arkel about any perceived deficiencies.  Van Arkel asserts that the record indicates the only feedback he received was positive and that he was doing a great job according to his final performance evaluation.

Finally, Van Arkel contends he was never granted a public hearing on the issue of his removal.  Van Arkel did attend the meetings during which his removal was discussed but contends he was not allowed to speak or raise the issue.  For these reasons, Van Arkel asserts Defendants failed to comply with Chapter 331 in terminating his employment, and therefore he was never removed from his position as County Budget Director.

Van Arkel further contends that when Defendants removed him from his position as County Budget Director, they failed to also remove him from the Assistant to the Board position.  Van Arkel maintains that, consequently, he was never removed from this position, which was the one in which he spent a majority of his time.  In any event, Van Arkel contends Defendants failed to comply with Chapter 331 in removing him from this position.  Despite being appointed to this position via a Board resolution,

26

Defendants did not give Van Arkel notice, a list of reasons, or a hearing as required by the statute, and no resolution was passed to revoke Van Arkel's appointment as Assistant to the Board.

Defendants argue that Chapter 331 is not applicable separate from the claimed contractual incorporation.  On this point, Defendants first assert that Iowa Code section 331.321 pertains only to appointments made by the Board of Supervisors, not the Auditor, see Iowa Code § 331.321,[19] and therefore it is inapplicable to Van Arkel's employment as County Budget Director as he was appointed to that position by Dickerson acting as County Auditor.  Defendants also contend they complied with those sections of Chapter 331 that could possibly apply to Van Arkel's termination as County Budget Director.[20]  As a result, since Plaintiff cannot demonstrate the

---

[19] In fact, there are only two sections of Chapter 331 that address county auditors appointing employees with Board of Supervisors approval.  See Iowa Code §§ 331.503, 331.903.  The first of these provides, "[t]he auditor may . . . [s]ubject to requirements of section 331.903, appoint and remove deputies, clerks and assistants." Iowa Code § 331.503(2).  The second section states, "[t]he auditor . . . may . . . appoint, with approval of the board, one or more deputies, assistants or clerks for whose acts the principal officer is responsible . . . and the number and approval of each appointment shall be adopted by resolution recorded in the minutes of the board." Iowa Code § 321.903(1).  Because Van Arkel has expressly denied he was a deputy, assistant, or clerk, Defendants correctly argue that neither of these sections are applicable and thus cannot serve as the basis for invoking the provisions found elsewhere in Chapter 331.

[20] Defendants argue they complied with section 331.903 in employing Van Arkel, as the Board approved Plaintiff's appointment in Resolution 91-214, and then by maintaining a copy of the resolution as the certificate of appointment in the Auditor's office.  See Iowa Code § 331.903(1)-(2).  As to removal, this section merely states a certificate of removal may be revoked, without requiring any particular action to accomplish the revocation, see Iowa Code § 331.903(2), and Defendants contend

applicability of any other requirements in Chapter 331, Defendants assert his claim based on this section must fail.

Defendants assert that the Board was not required to follow the provisions of section 331.321(3) in removing an appointed employee such as Van Arkel. Defendants argue that neither of Van Arkel's positions is enumerated in subsection 1 of section 331.321, which requires boards of supervisors to appoint persons to 25 specified county positions or commissions.[21] Defendants maintain that Van Arkel's attempts to bootstrap his positions into the protection of section 331 by claiming they fall under section 331.321(z), which calls for board appointment of "other officers and agencies as required by state law," must fail. Defendants assert neither of Van Arkel's positions are akin to the 25 enumerated positions. Furthermore, Defendants assert neither of his positions was a county officer or agency, and Van Arkel has identified no state law requiring a board of supervisors to appoint a budget director or assistant to the board.

Finally, Defendants contend that even if Van Arkel's positions fall within the purview of subsection (1)(z), the removal provisions of subsection (3) are permissive,

---

VanderLinden's letter, a copy of which is kept in the Auditor's office, satisfies the statutory revocation provision. Moreover, under Iowa law, "[a]n assistant, clerk, or deputy without civil service status . . . would clearly be an employee at-will, subject to discharge at any time for any reason." Norton v. Adair County, 441 N.W.2d 347, 361 (Iowa 1989); 1990 Iowa Op. Att'y Gen. 97, available at 1990 WL 484915 (Iowa A.G. Dec. 24, 1990) (citing Norton and stating that "assistant county officers . . . are employees at will who serve at the pleasure of the principal officer making the appointment").

[21] Section 331.321(3), as amended in 2001, makes clear the removal provision only applies to persons appointed to the specific positions enumerated in subsection 1. See Iowa Code § 331.321, Historical and Statutory Notes: 2001 Legislation.

not mandatory, as evidenced by the use of the word "may" in subsection (3) in contrast to use of the word "shall" in subsection (1).  See Ace Prop. & Cas. Ins. Co. v. FCIC, — F. Supp. 2d —, 2005 WL 427747, at *10 (S.D. Iowa Feb. 10, 2005) (noting the term "may" is permissive in nature, while "shall" is mandatory) (citing Lopez v. Davis, 531 U.S. 230, 231 (2001), Anderson v. Yungkau, 329 U.S. 482, 485 (1947), and Primary Care Investors, Seven, Inc. v. PHP Healthcare Corp., 986 F.2d 1208, 1213 (8th Cir. 1993)).  Moreover, Defendants assert that like the revocation provision of section 331.903(2), the use of the word "may" makes the provision directory, not mandatory, and thus Defendants cannot be liable for failure to comply with the removal provision absent a showing of prejudice by Plaintiff.  Braunschweig v. Holmes, No. LACV024664 at n.1 (Iowa Dist. Ct. for Kossuth County Oct. 24, 2004) (rejecting argument that defendants were liable for failing to revoke appointment pursuant to Iowa Code § 331.903(2), noting the revocation provision was directory and such failure did not prejudice plaintiff).  Accordingly, Defendants assert the Board was permitted, but not required, to remove him from the Assistant to the Board position, and its failure to do so does not violate section 331.321.

The Court first finds it is not for this Court to parse a consolidated position. This is a function and power of the Board which it has chosen not to employ in the present circumstances.  If Van Arkel was removed from the Budget Director position, he was also removed as Assistant to the Board, a move apparently recognized by the Board and the County.  In any event, the Court finds Chapter 331 inapplicable because Van Arkel was not employed in the consolidated position under this section.

Thus, the Court holds Chapter 331 by its own terms does not apply to Van Arkel. His consolidated position is not one enumerated in the relevant section, nor should it be considered a position covered under subsection (1)(z). He was not a County officer appointed by the Board as that term is defined. Accordingly, Plaintiff's claim under Chapter 331 fails, and the Court must deny Plaintiff's motion for partial summary judgment on this claim.[22]

### 3.   County Personnel Policies

Van Arkel also asserts the Warren County Personnel Policies are incorporated by reference because that document was clearly and specifically referenced in the employment agreement. See In re Estate of Kokjohn, 531 N.W.2d at 101. This argument fails at the outset based on the Court's earlier finding that the argument was not ratified by the Board and is therefore not binding.

Van Arkel next asserts that the County policies constitute an exception to the doctrine of at-will employment. See Hunter v. Bd. of Trs. of Broadlawns Med. Ctr., 481 N.W.2d 510, 513 (Iowa 1992) (providing an exception to at-will employment occurs when "an employer's handbook or policy manual guarantees an employee that discharge will occur only for cause or certain conditions") (citations omitted). Van Arkel argues that Defendants' at-will employment argument fails because that relationship was modified by either the written agreement or the County's policy manual. Indeed, modification of an at-will employment relationship to one based in

---

[22] Even if Chapter 331 were applicable, Defendants may have "substantially complied" with its requirements in terminating Van Arkel's employment. Because the Court finds the Chapter does not apply under either the terms of a binding contract or based on the statute itself, the Court need not analyze the issue further.

contract may be accomplished by contract or through an employer's handbook or policy manual.  See Balmer v. Hawkeye Steel, 604 N.W.2d 639, 641 (Iowa 2000) (citing Heugerich v. IBP, Inc., 547 N.W.2d 216, 219 (Iowa 1996)).[23]

Van Arkel references the 1991 Personnel Policy because that was the manual in effect at the time of the employment agreement.  He further states this version should apply as Van Arkel was unaware of any prospective changes when he accepted employment with the County.

───────────────

[23] This Court recently dealt with a similar argument.  See Malone v. Des Moines Area Cmty. Coll., 2005 WL 29008, at *4-5 (S.D. Iowa Jan. 26, 2005).  In that case, the Court stated the following regarding at-will employment in Iowa:

> "Under Iowa law, employment relationships are presumed to be at-will." Bradshaw v. Brown Group, Inc., 258 F.3d 847, 849 (8th Cir. 2001) (citing Fogel v. Trs. of Iowa Coll., 446 N.W.2d 451, 455 (Iowa 1989)) . . . . In the absence of a written employment contract, the employee is an at-will employee, and an employer may discharge an at-will employee at any time, for any reason, or for no reason whatsoever, under Iowa law. Huegerich v. IBP, Inc., 547 N.W.2d 216, 219-20 (Iowa 1996) (citations omitted).  There are two "narrow" exceptions to this general rule:  first, where "a contract is created by an employer's handbook or policy manual;" and second, where the discharge clearly violates a "well-recognized and defined public policy of the state." Id. (citations omitted); see also Bradshaw v. Brown Group, Inc., 258 F.3d 847, 849 (8th Cir. 2001).

Id. at *4 and n.7.  The Court further explained,

> Whether an employer's writing "binds the parties in contract is a question of law, unless the document is ambiguous." Bradshaw, 258 F.3d at 849. The writing may create a unilateral contract if "'(1) the handbook is sufficiently definite in its terms to create an offer; (2) the handbook has been communicated to and accepted by the employee so as to create an acceptance; and (3) the employee has continued working, so as to provide consideration.'" Id. (quoting Fogel v. Trs. of Iowa Coll., 446 N.W.2d 451, 456 (Iowa 1989)).

Id. at *5.

The personnel policy lists three classes of work rules, or conditions for dis-charge, which require varying degrees of discipline depending upon the seriousness of the violation.  Violation of a Class I rule will usually not result in discharge; violation of a Class II rule may result in "more serious disciplinary measures, up to, and including, discharge"; and violation of a Class III rule may result in immediate discharge.  The personnel policy also provides for progressive discipline.

Van Arkel asserts Defendants violated this policy by not following progressive discipline.  Van Arkel was never issued a written reprimand or suspension during his 11 years of employment with the County.  In addition, Van Arkel asserts there have been no allegations against him of "serious misconduct", the only violation level providing for immediate suspension or discharge.

The 1991 Personnel Policies, in a section entitled "Employees at Will", provides "[e]mployment with Warren County is for an indefinite time and is terminable at any time, with cause shown by the Employer, or at a completion of a special grant or project."[24]  Van Arkel seizes upon the statement that employment is terminable for

---

[24] This section in the 1991 policy states the following in full:
<u>Employees at Will</u>
Employment with Warren County is for an indefinite time and is termin-able at any time, with cause shown by the Employer, or at a completion of a special grant or project.  The only exception to this provision is in the event of the existence of a written contract with an employee which pro-vides to the contrary.  Nothing in these Personnel Policies or in other rules or policies adopted by the Board of Supervisors shall in any way be con-strued as creating an employment contract, either express or implied.
Van Arkel asserts that he has an employment agreement but it requires that removal be subject to the provisions of the Warren County Personnel Policy.  He asserts this is not contrary to the terms of the policy.

cause shown and contends that this requires his employment could only be terminated for cause.

Under Iowa law, "for cause" and "just cause" have the same meaning. Lockhart v. Cedar Rapids Cmty. Sch. Dist., 577 N.W.2d 845, 846-47 (Iowa 1998) (discussing the meaning of cause within the context of statutes governing termination of public employees). The term "just cause" encompasses "reasons that relate to an employee's performance of his or her job and the impact of that performance on an employer's ability to attain its reasonable goals." Id. at 847 n.1. "Just cause" has been defined "to comprehend a focus in the ability and fitness of an employee to discharge the duties of his or her position, bearing in mind the legislative purpose to protect the public against incompetence and maintain high standards of performance," Hawkinson v. Louisa County Civil Serv. Comm'n, 431 N.W.2d 350, 353 (Iowa 1988), but "does not include 'reasons which are arbitrary, unfair, or generated out of some petty vendetta.'" Lockhart, 577 N.W.2d at 847 n.1 (quoting Briggs v. Bd. of Dirs. of Hinton Cmty. Sch. Dist., 282 N.W.2d 740, 743 (Iowa 1979)).

Van Arkel asserts Defendants' stated reasons for his termination do not constitute "just cause" as required by the 1991 Personnel Policies. According to the letter he received, Van Arkel was fired for "irreconcilable differences in management philosophies," which is not listed as a violation of the work rules in the Personnel Policies. Van Arkel asserts that Defendants failed to terminate him for cause as required by the Personnel Policies under the terms of his employment agreement.

Defendants counter that Van Arkel misreads the policies and improperly relies on a constricted view of the relevant provisions. Defendants point out that the 1991

33

version of the policies clearly indicates it was updated, and Van Arkel provides no support for his claim that the 1991 version is controlling.  The agreement does not indicate which version is to be incorporated, and both the 1991 policy and 2001 policy state they are subject to "modifications and further development."  Defendants argue it is only logical that the parties intended Plaintiff's removal from his position to be subject to the Personnel Policies in effect at the time a termination decision is made.

On this basis, Defendants contend the 2001 Personnel Policies in effect at the time of Van Arkel's termination are controlling.  The 2001 Personnel Policies as revised state multiple times that employment with the County is at will,[25] and that the mere fact the Personnel Policies contain disciplinary procedures and work rules does not alter the at-will nature of the employment.[26]  In any case, the Policies note under

---

[25] For example, in the introduction, the Policies state, "the County wants you to clearly understand that these Personnel Policies are not a contract of employment. You and the County both have a legal right to terminate your employment at any time, and for any reason, except certain reasons specifically prohibited by law."  The Policies further state, under the heading "Employees At Will", that

> Employment with Warren County is for an indefinite time and is terminable at any time, with or without cause for any reason not contrary to the law. The only exception to this provision is in the event of a written contract with an employee, which provides to the contrary.

And later, under the heading "Resignation or Termination," the Policies provide:

> As an employee of the County, you are an "at-will" employee.  That phrase has a special meaning in the law; it means that either you or the County can terminate the employment relationship for any reason which is not contrary to the law, or for no reason at all.  You may be terminated for violating any of the policies explained in these Personnel Policies (as revised from time to time), performance deficiencies, for other reasons, or for no reason at all.

[26] See prior footnote.  Also, the policies later reiterate in the "Disciplinary Procedures" section that the "policy regarding disciplinary procedures does not change the at-will nature of the employment relationship."  The 1995 version of the Personnel

34

"Disciplinary Action" that "[t]hese rules are <u>not</u> necessarily the only areas in which disciplinary action may be taken if conduct or instances arise."  Likewise, under the "Disciplinary Procedures" section, the Policies provide that "[t]he County shall have the right to suspend or discharge immediately if it finds such action warranted by the circumstances."  Additionally, under the "Resignation or Termination" section, the Policies state an employee may be terminated for violating the policies explained in the Policies as revised, for performance deficiencies, or for other reasons.

Defendants also assert that Plaintiff's interpretation that the policies somehow require cause for termination is erroneous and inconsistent with the context of the relevant paragraph and the entire handbook.  The handbook repeatedly emphasizes that employment is at will and that the policies in no way change the nature of employment. Defendants assert the phrase relied upon by Van Arkel, i.e., "Employment with Warren County is for an indefinite time and is terminable at any time, with cause by the employer, or at completion of a special grant or project", should be read as a disjunctive statement where an employee may be terminated (1) at any time, or (2) for cause, or (3) at the completion of a project.  Defendants contend that this reading is consistent with the surrounding text and commonly understood meaning of employment at-will. Indeed, Warren County asserts that since at least 1989 it has maintained the policy that its employees are "at will", meaning they could quit or be terminated with or without cause at any time.

_____

Policies (revising the 1991 Policies) relied on by Plaintiff also contains the following disclaimer:  "This booklet is not a contract, but is intended solely to give employees a short description of the benefits and working conditions in the County.  Warren County is an employment-at-will employer."

Defendants further contend that after reviewing both versions of the Personnel Policies, it is clear that the provision in the agreement at issue requiring removal pursuant to the Personnel Policies actually guarantees nothing more than employment at-will.  They argue the policies in no way modified the at-will nature of Van Arkel's employment with the County, especially when recognizing the disclaimers in all versions of the handbook.  See Anderson v. Douglas & Lomason Co., 540 N.W.2d at 288 (finding progressive discipline procedures in handbook did not create a contract because handbook contained disclaimer stating it was not intended to create any contractual rights and that the employer could change the terms of the handbook at any time); Travillion v. Heartland Pork Enters., 669 N.W.2d 262 (table), 2003 WL 21464807, at *3-4 (Iowa Ct. App. June 25, 2003) (finding handbook did not create an exception to the employment at-will doctrine where it contained a disclaimer, and a reasonable employee would understand that the employer had not assented to be bound by the handbook's provisions).

Finally, even assuming Defendants were required to have cause to terminate Van Arkel, Defendants contend VanderLinden had sufficient cause and made Van Arkel aware of that cause when she terminated his employment.  Indeed, the letter delivered to Van Arkel states he was being terminated due to "irreconcilable differences in management philosophies."  While Van Arkel does not believe this to be a good enough reason, Defendants contend it is enough given the circumstances of this case and the requirements of the County Personnel Policies.  Thus, Defendants contend they did not breach the agreement as asserted by Plaintiff.

As a principal matter, the Court finds the policy in existence at the time of termination is the controlling policy, i.e., the 2001 policy as revised.[27]  Both the 1991 and 2001 policies provide express notice to employees that the personnel policies may be updated and or superceded.  The Court further finds the policies do not modify the nature of Van Arkel's employment with the County.  Both policies cited by the parties frequently reference the at-will nature of most County employees and provide that the policies existence does not override or act as an exception to that relationship.

The 2001 Personnel Policies provide, as part of the disciplinary/removal procedures, that "[t]hese rules are <u>not</u> necessarily the only areas in which disciplinary action may be taken if conduct or instances arise" and "[t]he County shall have the right to suspend or discharge immediately if it finds such action warranted by the circumstances."  The 2001 policies contain *no* provision requiring an employee be fired "for cause."[28]  Based on these provisions, the Court finds the County adequately complied with the policies in effect and the policies provide no support for Plaintiff's breach of contract claim.  Accordingly, the Court must deny Plaintiff's motion for partial summary judgment on this claim.

---

[27] This would be true even if the employment agreement was valid and binding *and* incorporated by reference the County personnel policies.

[28] In response to this Court's questioning, counsel for Defendants explained that the "for cause" phrase in the 1991 policies was included for the purpose of "notice pay".  Looking at the entire document, Defendants draw the Court's attention to the fact that the policies provide for two weeks notice or equivalent payment be made at termination *unless* the employee is terminated "for cause".

To summarize, Plaintiff's motion for partial summary judgment must be denied in its entirety.  At the outset, Plaintiff's breach of contract claim fails because there has been no Board ratification of the employment agreement, with or without consideration of Plaintiff's late-filed evidence.  Even if the agreement was binding, the Court finds Defendants substantially complied with its terms.  In addition, Chapter 331 is inapplicable either under the terms of the contract or by the terms of the statute itself.  Finally, the County personnel policies do not create a contract to overcome Plaintiff's at-will status; the relevant policy guarantees nothing more than the actions undertaken by Defendants in this case.

## C.        Defendants' Motion for Summary Judgment

Defendants request the Court grant their motion for summary judgment on all counts asserted by Plaintiff in his Complaint.  Defendants contend there is no genuine issue of material fact that would allow a reasonable jury to find for Van Arkel. Van Arkel resists, contending there still remain genuine issues of material fact and, in fact. summary judgment should actually be granted in his favor on Counts V and VI of his Complaint as discussed supra.[29]

---

[29] Defendants argue that throughout Plaintiff's Statement of Material Facts and Brief, Van Arkel "asserts countless alleged 'facts' which are not based on admissible evidence in the Record and often distort the true words of the documents cited, in an attempt to create issues of fact to preclude summary judgment."  Defendants then request the Court strike the alleged facts that are not in conformance with Local Rule 56.1, see Local Rule 1.1(f) (stating failure to comply with the Local Rules may result in "the exclusion of evidence [or] the striking of pleadings or other papers"), or at a minimum, to closely review the cited portions to discern the real facts.  See Erickson v. Farmland Indus., 271 F.3d 718, 725 n.3 (8th Cir. 2001) (finding plaintiff overstated the evidence and stated that the court "can hardly overstate the importance of accuracy in counsel's descriptions of the record").

### 1.   Discrimination Claims

Van Arkel asserts claims of discrimination based on both age and gender.  In Count I of the Complaint, Van Arkel asserts an equal protection claim on the basis of age and/or gender under section 1983.  Count II alleges age discrimination predicated on the Age Discrimination in Employment Act, 29 U.S.C. § 623, while Count III alleges gender discrimination based on Title VII of the Civil Rights Act as codified in 42 U.S.C. § 2000e-2.  Defendants argue Van Arkel cannot establish his termination was the result of age or gender discrimination in violation of Title VII, the ADEA, or section 1983.  The Eight Circuit applies the McDonnell Douglas analysis to a claim of employment discrimination whether brought under Title VII, the ADEA, or section 1983 as a violation of the Fourteenth Amendment; therefore, the summary judgment standard is identical for each of these discrimination claims.  See Ottman v. City of Independence, 341 F.3d 751, 756 (8th Cir. 2003); Duffy, 123 F.3d at 1036-37.

In cases where "the plaintiff lacks evidence that clearly points to the presence of an illegal motive,[30] he must avoid summary judgment by creating the requisite inference

_____

While this Court has found it necessary on occasion to strike filings in response to a motion for summary judgment and deem admitted the opposing party's facts, see, e.g., White v. Prudential Ins. Co. of America, 354 F. Supp. 2d.1008, 1014-16 (S.D. Iowa 2005), the Court will only do so in extreme cases.  The Court declines to take this step in the present action, though the Court does review all filings, including assertions of fact and the supporting documentation in the parties' appendices, carefully and thoroughly and accepts as true facts only those alleged "facts" that are supported by the record.

[30] The Eighth Circuit has long recognized that under McDonnell Douglas, "a plaintiff may survive the defendant's motion for summary judgment in one of two ways": first, "by proof of 'direct evidence' of discrimination"; or second, "by creating the requisite inference of unlawful discrimination" through the three-part McDonnell

of unlawful discrimination through the <u>McDonnell Douglas</u> analysis, including sufficient

evidence of pretext."[31]  <u>Griffith</u>, 387 F.3d at 736 (citing <u>Harvey v. Anheuser-Busch,</u>

_____

<u>Douglas</u> analysis.  <u>Griffith v. City of Des Moines</u>, 387 F.3d 733, 736 (8th Cir. 2004);
<u>see</u> <u>Torlowei v. Target</u>, — F.3d —, 2005 WL 678504, at *1 (8th Cir. Mar. 24, 2005)
(noting that in <u>Griffith</u>, the court "stressed that <u>Desert Palace</u> is applicable to post-trial
jury instructions, and not to the analysis performed at summary judgment . . . [a]nd . .
. concluded that any language in <u>Desert Palace</u> that may seem to point to a change in
the <u>McDonnell Douglas</u> framework refers only to the traditional understanding that
direct evidence – evidence, circumstantial or otherwise, that shows a strong causal con-
nection between discriminatory animus and the adverse employment action – is another
method of defeating a defendant's summary judgment motion."); <u>see also</u> footnote 32
<u>infra</u> (discussing strong or direct evidence versus circumstantial evidence and when
application of <u>McDonnell Douglas</u> is required).  The Supreme Court has overruled the
<u>Price Waterhouse</u> determination expressed by Justice O'Connor that "a plaintiff must
have 'direct evidence' of a discriminatory motive to shift the burden of proof."
<u>Griffith</u>, 387 F.3d at 736 n.3 (citing <u>Desert Palace, Inc. v. Costa</u>, 123 S. Ct. 2148,
2155 (2003)); <u>see also</u> <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989).

[31] In <u>Griffith</u>, the Eighth Circuit concluded the decision in <u>Desert Palace</u>, 123 S.
Ct. at 2148, "had *no* impact on prior Eighth Circuit summary judgment decisions."
<u>Griffith</u>, 387 F.3d at 736.  Therefore, any cases finding differently are inapposite and
inapplicable.  <u>See, e.g.</u>, <u>Rachid v. Jack in the Box, Inc.</u>, 376 F.3d 305, 311 (5th Cir.
2004); <u>Skomsky v. Speedway Super America, L.L.C.</u>, 267 F. Supp. 2d 995, 998-1000
(D. Minn. 2003).  This conclusion was reemphasized in a recent *per curiam* opinion
rendered by the Eighth Circuit.  <u>See</u> <u>Torlowei v. Target</u>, — F.3d —, 2005 WL 678504,
at *1 (issuing a *per curiam* order and citing <u>Griffith</u> to make clear that <u>Desert Palace</u>
did not alter the <u>McDonnell Douglas</u> summary judgment standard).
   In so finding, the Eighth Circuit discussed those cases finding <u>Desert Palace</u>
somehow abrogated <u>McDonnell Douglas</u>, <u>see</u> <u>Griffith</u>, 387 F.3d at 735 (citing <u>Dunbar</u>
<u>v. Pepsi-Cola General Bottlers of Iowa, Inc.</u>, 285 F. Supp. 2d 1180, 1197 (N.D. Iowa
2003) (finding <u>Desert Palace</u> modified <u>McDonnell Douglas</u> analysis in employment
discrimination cases)); <u>see also</u> <u>Dare v. Wal-Mart Stores, Inc.</u>, 267 F. Supp. 2d 987 (D.
Minn. 2003) (finding burden shifting analysis of <u>McDonnell Douglas</u> no longer good
law), and determined it did "not agree that <u>Desert Palace</u> affected controlling Eighth
Circuit precedents" in the fashion pronounced by these courts.  <u>Griffith</u>, 387 F.3d at
735.  In support of its conclusion, the court discussed (1) the fact that <u>Desert Palace</u>
involved a *post-trial* issue of the appropriateness of a jury instruction and the differing
standard on summary judgment, (2) the Supreme Court's application of <u>McDonnell</u>
<u>Douglas</u> in <u>Reeves</u>, 530 U.S. at 150, and <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S.

502, 511 (1993), and (3) the continued confirmation of <u>McDonnell Douglas</u> in cases following <u>Desert Palace</u>.  <u>Id.</u>  Indeed, the Court notes that "[f]or concrete evidence confirming that <u>Desert Palace</u> did not forecast a sea change in the Court's thinking, we need look no further than <u>Raytheon Co. v. Hernandez</u>, 540 U.S. 44, 124 S. Ct. 513, 517-18 & n.3 (2003), a post-<u>Desert Palace</u> decision in which the Court approved use of the <u>McDonnell Douglas</u> analysis at the summary judgment stage."  <u>Id.</u>; see also <u>Winter v. Bank of America, N.A.</u>, 2003 WL 23200278, at *3 (N.D. Tex. Dec. 12, 2003) ("If the Supreme Court were going to make a draconian departure from 30 years of well-established employment discrimination precedent, it would have done so with unmistakable clarity.  In <u>Desert Palace</u>, the Supreme Court does not even intimate that it is overruling, restricting or clarifying <u>McDonnell Douglas</u>."); Christopher R. Hedican, Jason M. Hedican, & Mark P.A. Hudson, <u>McDonnell Douglas</u>: Alive and Well, 52 Drake L. Rev. 383, 400 (Spr. 2004) (arguing that if the Supreme Court intended to overrule a seminal decision like <u>McDonnell Douglas</u>, it would have done so expressly and explicitly and further pointing out that the Court acknowledged the viability of <u>McDonnell Douglas</u> in <u>Raytheon</u> by reversing the appellate court for failing to apply the <u>McDonnell Douglas</u> standard correctly).  Ultimately, the <u>Griffith</u> court found "<u>Hicks</u> and <u>Reeves</u> are far more pertinent to our summary judgment analysis than <u>Desert Palace</u>."  <u>Griffith</u>, 387 F.3d at 735-36.

As <u>Griffith</u> constitutes controlling precedent, this Court must follow and apply the <u>McDonnell Douglas</u> analysis in the present action.  <u>Hesse v. Avis Rent A Car Sys.</u>, 2005 U.S. App. LEXIS 302 (8th Cir. 2005) (applying <u>McDonnell Douglas</u> framework where plaintiff did not present direct evidence of discrimination); <u>see Hood v. United States</u>, 342 F.3d 861, 864 (8th Cir. 2003) (noting district court is bound to apply the precedent of the Court of Appeals for the Eighth Circuit); <u>Okruhlik v. Univ. of Ark. Ex rel. May</u>, 255 F.3d 615, 622 (8th Cir. 2001) (finding court must follow controlling precedent and it is up to Supreme Court to overrule its own decisions and finding further that only Eighth Circuit *en banc* can overrule controlling circuit precedence); <u>see also Roper v. Simmons</u>, — U.S. —, 125 S. Ct. 1183, 1229 (2005) (Scalia, J., dissenting) (finding it inappropriate to disregard precedent and chiding majority for not "admonishing [district] court for its blatant disregard of our precedent").  Indeed, it is the prerogative of the Supreme Court alone "'to overrule one of its precedents,'" <u>Roper</u>, 125 S. Ct. at 1229 (Scalia, J., dissenting) (quoting <u>State Oil Co. v. Khan</u>, 522 U.S. 3, 20 (1997)), and "that has been true even where "'changes in judicial doctrine' ha[ve] significantly undermined" our prior holding, <u>United States v. Hatter</u>, 532 U.S. 557, 567 (2001) (quoting <u>Hatter v. United States</u>, 64 F.3d 647, 650 (Fed. Cir. 1995)), and even where our prior holding 'appears to rest on reasons rejected in some other line of decisions,' <u>Rodriguez de Quijas v. Shearson/American Express, Inc.</u>, 490 U.S. 477, 484 (1989)."  <u>Id.</u>  Accordingly, this Court finds it wholly inappropriate for counsel to continue to argue <u>Desert Palace</u> has somehow overruled <u>McDonnell Douglas</u> and altered the analysis at the summary judgment stage of an employment discrimination action.

_____

The Eighth Circuit did distinguish the plaintiff's burden of proof at different stages of the litigation, Griffith, 387 F.3d at 735 ("At the summary judgment stage, the issue is whether the plaintiff has sufficient evidence that unlawful discrimination was a motivating factor in the defendant's adverse employment action.  If so, the presence of additional legitimate motives will not entitle the defendant to summary judgment.  Therefore, evidence of additional motives, and the question whether the presence of mixed motives defeats all or some part of plaintiff's claim, are trial issues, not summary judgment issues."), but did so to demonstrate the inapplicability of Desert Palace.  Griffith did not mean to intimate that every case turns into a mixed motives case and that all a plaintiff needs to demonstrate in order to defeat summary judgment in a dis-crimination action is to show forbidden considerations were more likely than not moti-vating factors in the defendant's employment practice.  This has never been part of the analysis engaged in by courts of the Eighth Circuit, and the Griffith court expressly stated Desert Palace did not affect controlling Eighth Circuit precedence.  Id. at 736.  The Griffith court further held that courts must continue to apply the McDonnell Douglas analysis, including assessing the assertion of pretext, in analyzing discrim-ination claims at the summary judgment stage.  Id. at 736-37.

Reliance on the concurring opinion from Griffith is equally improper, especially since that opinion directly contradicts the majority holding regarding the effects of Desert Palace.  See Griffith, 387 F.3d at 739 (Magnuson, J., concurring specially) ("I write separately to express my views on how Desert Palace . . . affects the analysis used at the summary judgment stage of an employment discrimination lawsuit.").  In his concurrence, Judge Magnuson, a district judge sitting by designation, states his opinion (previously stated in a myriad of district court decisions, including Dare, wherein Judge Magnuson was one of the first judges to rule Desert Palace overruled McDonnell Douglas) that Desert Palace and the 1991 amendments to the Civil Rights Act effectively eliminated the McDonnell Douglas framework.  Id.  ("Desert Palace exposes the legal fiction for what it is, and in its wake, I can no longer adhere to or apply an arbitrary and antiquated test that has been superceded by Congress.").  Indeed, while Judge Magnuson may ultimately be correct that changes to the Civil Rights Act warrant some sort of modification or elimination of McDonnell Douglas, id.; see also William R. Corbett, An Allegory of the Cave and the Desert Palace, 41 Hous. L. Rev. 1549 (Spr. 2005) (claiming to be one of the enlightened, referencing Plato's writings, and attempting to demonstrate the fallibility of continued application of McDonnell Douglas following the Desert Palace decision); Jeffrey A. Van Detta, _"Le roi est mort; vive le roi!"_: An Essay on the Quiet Demise of _McDonnell Douglas_ and the Transformation of Every Title VII Case After _Desert Palace, Inc. v. Costa_ into a "Mixed-Motives" Case, 52 Drake L. Rev. 71 (2003) (discussing the effect of Desert Palace and concluding that it effectively abrogates McDonnell Douglas and that nearly all employment discrimination cases should survive summary judgment); cf. Hedican, et al., supra (responding to Van Detta's article and arguing Desert Palace has little, if any, impact on the McDonnell Douglas standard), it is not for a district court judge to

42

Inc., 38 F.3d 968, 971 (8th Cir. 1994)); see McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under McDonnell Douglas, Plaintiff must first establish a prima facie case of discrimination.  Reeves, 530 U.S. at 142.

Generally, to establish a prima facie case of discrimination, a plaintiff must show the following: (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for the position by meeting the employer's legitimate job-related expectations; (3) plaintiff suffered an adverse employment action; (4) under circumstances that would allow a reasonable trier of fact to infer that unlawful discrimination occurred.  See Whitley, 221 F.3d at 1055 (citing, inter alia, McDonnell Douglas, 411 U.S. at 802).  If Plaintiff is able to establish a prima facie case, the burden of production shifts to the Defendants to show a legitimate, nondiscriminatory reason for its action.  Reeves, 530 U.S. at 142.

Upon such a showing, the presumption of discrimination disappears, see Hicks, 509 U.S. at 510, and the burden shifts once more to the plaintiff who must prove that the defendant's articulated justification is a pretext for discrimination.  Reeves, 530 U.S. at 142-43. The plaintiff may accomplish this either by rebutting the proffered reason with evidence of pretext or discriminatory animus.  McDonnell Douglas, 411

---

prognosticate or disregard controlling precedent, regardless of the validity of his reasons.

Based on Griffith, this Court recognizes the continued validity of the McDonnell Douglas analysis.  It is not for a district court to act as a legal commentator in direct contravention of controlling legal precedent, Rodriguez de Quijas, 490 U.S. at 486 (Stevens, J., dissenting) (noting majority conclusion that appellate court improperly declined to follow controlling precedence and calling such action by a lower court "an indefensible brand of judicial activism"), though this Court does find the conclusions of the Eighth Circuit in Griffith well-reasoned and sound.  This Court will apply the McDonnell Douglas standard to those cases, like the present one, that lack strong (direct) evidence of discrimination.

U.S. at 804-05; see also Burdine, 450 U.S. at 253 (finding "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination"), or by demonstrating that the proffered explanation is "unworthy of credence." Reeves, 530 U.S. at 147; Burdine, 450 U.S. at 256; Weiland v. El Kram, Inc., 233 F. Supp. 2d 1142, 1151-52 (N.D. Iowa 2002).

In other words, where the plaintiff produces no strong (direct) evidence[32] that illegal discrimination motivated the alleged adverse employment action, the plaintiff "must produce sufficient circumstantial evidence of illegal discrimination under the

---

[32] The Eighth Circuit has explained that direct evidence "is not the converse of circumstantial evidence" as many assume; "[r]ather, direct evidence is evidence 'showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action." Griffith, 387 F.3d at 736 (quoting Thomas v. First Nat'l Bank of Wynne, 111 F.3 64, 66 (8th Cir. 1997)). The Eighth Circuit further described the process in a discrimination action as follows:

> A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part McDonnell Douglas analysis to get to the jury, regardless of whether his strong evidence is circumstantial. But if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the McDonnell Douglas analysis . . . .

Id.

The difference between strong (direct) evidence of discrimination and circumstantial evidence thus becomes important only in the determination of whether the McDonnell Douglas analysis is applicable. Once that determination is made, circumstantial evidence is sufficient to satisfy plaintiff's burdens in the McDonnell Douglas paradigm. Griffith, 387 F.3d at 736; see also Desert Palace, 123 S. Ct. at 2154-55 (comparing the adequacy of circumstantial evidence in criminal cases with its use in civil cases where the burden of proof is lower).

McDonnell Douglas paradigm – by presenting a prima facie case of intentional discrim-
ination plus sufficient evidence that one or more of the [defendant's] proffered nondis-
criminatory reasons is a pretext for unlawful discrimination." Griffith, 387 U.S. at 736-
37. The burden of *persuasion* on the ultimate question of discrimination remains at all
times with the plaintiff. Reeves, 530 U.S. at 142 ("'The ultimate burden of persuading
the trier of fact that the defendant intentionally discriminated against the plaintiff
remains at all times with the plaintiff.'") (quoting Burdine, 450 U.S. at 253).

### a.   Age Discrimination

The ADEA makes it unlawful for an employer to discriminate against an
employee who is at least 40 years old based on the employee's age. 29 U.S.C. §§
623(a)(1), 631. As Van Arkel has no strong (direct) evidence of age discrimination,[33]
the Court evaluates that claim using the McDonnell Douglas analysis. See Griffith, 387
U.S. at 736; Mayer v. Nextel West Corp., 318 F.3d 803, 806 (8th Cir. 2003). To
establish a prima facie case, Van Arkel must demonstrate that (1) he is at least 40-years
old, (2) he was meeting the County's reasonable performance expectations, i.e., he was
qualified for his position, (3) he was terminated (4) because of his age and he was
replaced by a person substantially younger so as to permit an inference of age discrim-
ination. Mayer, 318 F.3d at 807 (citing McDonnell Douglas, 411 U.S. at 802, and
Hopper v. Hallmark Cards, Inc., 87 F.3d 983, 988 (8th Cir. 1996)).

Defendants argue that Van Arkel cannot prove the second and fourth prongs of
this analysis. Even if the Court determines Van Arkel has established a prima facie
case of age discrimination, Defendants assert they have proffered a legitimate,

---

[33] Van Arkel does not dispute this.

nondiscriminatory reason for Plaintiff's termination, and Van Arkel is unable to rebut that reason by showing it was merely pretextual.

As to the second element, the standard "is not that of the ideal employee, but rather what the employer could legitimately expect." Keathley, 187 F.3d at 920. Van Arkel had significant responsibility with respect to the County budget process and reported to both the County Auditor and the Board. Defendants acknowledge Van Arkel received high performance ratings from the Board as his job tasks were well done,[34] but contend his performance was ultimately deficient in legitimate matters to the County, and that his employment was properly terminated when he failed to correct those deficiencies. See Erenberg v. Methodist Hosp., 357 F.3d 787, 793 (8th Cir. 2004).

Specifically, Defendants argue that in April 2002, VanderLinden, who is the current County Auditor and Van Arkel's immediate supervisor, determined she simply could no longer work with Van Arkel because of "irreconcilable differences in management philosophy," *not* because of his age and/or gender. Defendants assert VanderLinden's phrasing was a euphemism for Van Arkel's micromanaging of the County and continuous disregard of directives from his supervisors. In other words, Van Arkel was terminated for his attitude and treatment of VanderLinden and other County employees despite his successful completion of the job tasks assigned to him.

---

[34] VanderLinden rebuts Plaintiff's assertions that she concurred in the Board's favorable evaluations. She did not provide ratings that were used to compile his composite evaluation score, and she only signed the evaluation because she sat in on the Board's evaluation meeting of Van Arkel and took notes/minutes as one of her functions as County Auditor.

Defendants next argue that while the much younger Sease (age 26) was hired as Budget Assistant in October 2002, she did not assume all of Van Arkel's previous duties. Defendants assert it is undisputed that Van Arkel has never been replaced with respect to his duties as Assistant to the Board, which position consumed 80 percent of his working time. Instead, according to Defendants those duties have been assumed by the members of the Board, Dave Minehart (age 69), Kevin Middleswart (age 52), and Bob Sandy (age 75). Defendants assert Van Arkel's prima facie case fails because several individuals older than Van Arkel assumed the vast majority of his duties.[35] See Wilson v. IBM Corp., 62 F.3d 237, 240, 241 (8th Cir. 1995) (finding age discrimination case failed on the fourth prong of the prima facie case when the 52-year old plaintiff's duties were distributed among eight co-workers, of whom three were more than 50 years old).

Defendants next contend that even if the Court determines Van Arkel has made a prima facie case of age discrimination, the County has proffered a legitimate, nondiscriminatory reason for Van Arkel's termination that Plaintiff is unable to rebut. The credibility of the reason is not evaluated at this stage of the analysis; rather, the reason need only be facially reasonable. Reeves, 530 U.S. at 142.

As detailed above, Defendants contend Van Arkel was terminated because VanderLinden could no longer work with him due to Van Arkel's rude treatment of other County employees, his micromanaging County affairs, his failure to advise her (as

---

[35] The assumption of duties by elected officials, whose age was subject to the discernment of the voters rather than an employment supervisor, creates a somewhat different analysis. However, it does illustrate a lack of support for the inference of age discrimination.

his supervisor) of matters she felt she needed to know about, and his failure to inform her and the Board of his daily whereabouts.  VanderLinden had received multiple complaints from other department heads concerning Van Arkel,[36] and had also heard Board members repeatedly advise Van Arkel he needed to communicate better with co-workers.[37]  VanderLinden claims she felt, based on past experience working alongside Van Arkel in the Auditor's office under the direction of Dickerson, that Van Arkel never changed, always had an excuse, and terminating his employment was the only way to get him to listen.

Defendants further note that the Board could have chosen to retain Van Arkel as Assistant to the Board, and even discussed moving that position to fall under the Board's office instead of the Auditor's office.  Ultimately, however, the Board chose not to retain Van Arkel or even replace him.  Defendants assert this action effectively concurred with VanderLinden's actions and  that Van Arkel's employment with the County was completely terminated.

Defendants assert Van Arkel is unable to rebut this reason at the final stage of the analysis, i.e., he is unable to show Defendants' proffered reason was a pretext for

---

[36] These complaints resulted in at least two meetings of County department heads with VanderLinden where their complaints about Van Arkel were aired.  One of these meetings took place *after* Van Arkel's last County evaluation, though at least one department head complained that these meetings were merely being used to "bash" another employee.  In addition, VanderLinden claims she was approached by at least five department heads in March 2002 regarding complaints about Van Arkel, and that these latest complaints, received just weeks before she terminated his employment, precipitated the decision to terminate Van Arkel.

[37] In response to Van Arkel's contentions that VanderLinden had opportunity to voice complaints about Van Arkel at these meetings, Defendants state VanderLinden was present as part of her function to take notes and not to participate.

age discrimination.  To demonstrate pretext, Van Arkel must show a reasonable fact finder would find the County's reasons false or unbelievable while Van Arkel's explanation of intentional age discrimination is believable.  <u>Mayer</u>, 318 F.3d at 807-08. This burden is more onerous than the burden of proving a prima facie case.  <u>Sprenger v. Federal Home Loan Bank of Des Moines</u>, 253 F.3d 1106, 1111 (8th Cir. 2001) ("An employee's attempt to prove pretext or actual discrimination requires more substantial evidence, however, because unlike evidence establishing the prima facie case, evidence of pretext and discrimination is viewed in light of the employer's justification.").  The ultimate question in a disparate treatment discrimination case is whether the plaintiff was the victim of intentional discrimination.  <u>Reeves</u>, 530 U.S. at 153.

Defendants assert it would be difficult to show that the Auditor or the Board exhibited age-based animus toward Van Arkel considering Auditor VanderLinden is three months older than Van Arkel and the Board members are all significantly older than him.  Moreover, Defendants assert Van Arkel has failed to present sufficient evidence that the proffered reasons for termination were false, or that VanderLinden or the Board, either by conduct or statements, reflected a discriminatory attitude regarding Van Arkel's age and thus "there is simply no evidence that discrimination was a motivating factor in [plaintiff's] termination."  <u>See</u> <u>Kiel v. Select Artificials</u>, 169 F.3d 1131, 1135 (8th Cir. 1999).

Van Arkel himself admitted that VanderLinden never expressed any concern that Van Arkel was too old to perform the duties of his position with the County.  Indeed, the only alleged evidence of discrimination consists of a comment made by VanderLinden concerning a knee injury suffered by Van Arkel, which Defendants

contend was made in a joking context and had nothing to do with his job with the County.  Defendants argue this single, isolated comment is insufficient to establish age bias.  See Sprenger, 253 F.3d at 1113 (noting courts "hesitate to rely on isolated comments as proof as bias, . . . lest the law become a 'general civility code'") (internal citations omitted).[38]  Defendants also emphasize that as an at-will employee, Van Arkel could be terminated at any time and for any reason not contrary to law, and that while VanderLinden never reprimanded him, she had witnessed the Board advising him to overcome the same issues still plaguing him when he was terminated.

Defendants maintain that while Van Arkel clearly disagreed with VanderLinden's motivation in terminating his employment, it is not for the Court to decide whether VanderLinden's reasons constituted good business practices.  See Calder v. TCI Cablevision of Mo., Inc., 298 F.3d 723, 729-30 (8th Cir. 2002) (restating longstanding principle that courts are not to sit as superpersonnel departments and noting whether employer's "expectations constituted a good business practice is not for [courts] to decide"); Dorsey v. Pinnacle Automation Co., 278 F.3d 830, 837 (8th Cir. 2002) ("Courts do not sit as super-personnel departments to second-guess the business decisions of employer.").  Moreover, Defendants contend Van Arkel has not demon-strated VanderLinden did not honestly believe Van Arkel's actions were inappropriate

---

[38] In addition, Van Arkel raised a situation where the Board halted the termina-tion process of an older employee (approximately age 50) by the County Board of Health because the Board felt proper procedures were not being followed.  Defendants contend this situation supports the conclusion the Board would not tolerate unfavorable treatment of County employees, the reverse of what Van Arkel alleges.

and warranted dismissal when she decided to terminate his employment.  See McKay v. U.S. Dep't of Transp., 340 F.3d 695, 700 (8th Cir. 2003) ("In considering the pretext issues, 'our inquiry is limited to whether the employer gave an honest explanation of its behavior,' not whether its action was wise, fair, or correct.") (internal citations omitted); Sprenger, 253 F.3d at 1112 (noting that reliance on an honest, albeit incorrect, belief is not evidence of pretext) (citations omitted).

Finally, Defendants assert Van Arkel has offered no evidence that any similarly situated substantially younger employee was treated more favorably than him.  Trammel v. Simmons First Bank of Searcy, 345 F.3d 611, 615 (8th Cir. 2003).  There existed no other Budget Director, Assistant to the Board, or other consolidated positions within the County during the relevant time.  Upon Van Arkel's termination, the Board members assumed Van Arkel's Assistant to the Board duties while VanderLinden performed the budget director tasks for six months, upon which time, the position was redesigned and renamed as Budget Assistant to demonstrate the expectation that VanderLinden would continue to be responsible for the budget while hiring an assistant to help, not dominate, that process.  Defendants further contend that VanderLinden's record of hiring belies any assertion she harbored discriminatory animus toward Van Arkel on the basis of age.[39]

---

[39] Of eight employees in the Auditor's office, VanderLinden only hired two under the age of 40 – Sease (now age 28) and Dena King (now age 34).  VanderLinden has previously hired Helen Wilkinson (age 79) and Sue Mosher (age 47), and retained Wanda Bonnes (age 54), Kris Foland (age 48), Rhonda Green (age 50), Peg Hutchinson (age 53), and Mary Lynn Keeney (age 48).

Van Arkel counters that he has demonstrated he is qualified for his position and that his job performance met legitimate performance expectations.  In February 1998, Van Arkel was presented with the "Employee of the Year Award."  In addition, Van Arkel consistently received high performance ratings, and his evaluation ratings for the year 2001 were the highest of any County employee.  Van Arkel reiterates he was never reprimanded by VanderLinden in his role as Budget Director, nor was he ever suspended during the course of his employment.  Van Arkel contends that it is unlikely he would have received such high ratings, or never have received any written reprimands, if his performance had been as deficient as Defendants allege.

While Van Arkel asserts this is all he has to show to defeat summary judgment,[40] he does respond to Defendants' arguments that they have presented a legitimate,

---

[40] Plaintiff seizes on a sentence in the <u>Griffith</u> order that states the issue at summary judgement is "whether the plaintiff has sufficient evidence that unlawful discrimination was *a* motivating factor," <u>Griffith</u>, 387 F.3d at 735, as a basis for his argument that all he has to show is he was qualified for his position and meeting performance expectations and therefore there must be some illegal motive for his termination.  As explained more fully <u>supra</u>, at footnote 31, Plaintiff errs in his assertion that nothing more is required of him as a careful and dispassionate reading of the entire majority opinion in <u>Griffith</u> makes evident.

In fact, the Eighth Circuit clearly states that a plaintiff lacking clear evidence of discrimination "must avoid summary judgment by creating the requisite inference of unlawful discrimination through the <u>McDonnell Douglas</u> analysis, *including* sufficient evidence of pretext." <u>Id.</u> at 736 (emphasis added).  In other words, Van Arkel "must produce sufficient circumstantial evidence of illegal discrimination under the <u>McDonnell Douglas</u> paradigm – by presenting a prima facie case of intentional discrimination plus sufficient evidence that one or more of the [Defendants'] proffered nondiscriminatory reasons is a pretext for discrimination." <u>Id.</u> at 736-37.  The mere articulation of impermissible motives, without some proof, is not enough to preclude summary judgment. <u>See id.</u> at 736 (rejecting the modified analysis employed in <u>Dunbar</u>, 285 F. Supp. 2d at 1197, where the court concluded <u>McDonnell Douglas</u> must be modified to remove the pretext step and instead focus on whether plaintiff's protected characteristic was at least one factor motivating an adverse employment decision).

nondiscriminatory reason for his termination which Plaintiff cannot rebut with evidence of pretext. He asserts first that he has established a prima facie case of discrimination. Van Arkel next contends the preceding evidence demonstrates that Defendants' justification lacks credence and that there are genuine issues of material fact as to the existence of Van Arkel's alleged performance deficiencies.

In addition, Van Arkel takes issue with Defendants' characterization of VanderLinden's comment as a joke. He urges the Court to find comments in the workplace with respect to an employee's abilities lessening due to age as highly suspect at this stage of the proceedings. See Bienkowski v. American Airlines, Inc., 851 F.2d 1503, 1506-07 (5th Cir. 1988) (finding the court would not assume ageist comments "are not possibly probative of an unlawful discriminatory intent, given the parties' sharp disagreements over the operative facts of [plaintiff's] performance"). Van Arkel also finds embedded in VanderLinden's assertion that the only way she could get Van Arkel to listen was to terminate him the implication she thought Van Arkel was too set in his ways due to age.

Van Arkel also disagrees with Defendants' assertions that he was in fact reprimanded albeit in a more casual fashion. He contends the visits and counsel from Board members related to performance of his work duties is far different from a reprimand, written or verbal. He asserts that neither he nor the Board members considered such discussions a reprimand, and that the members of the Board never found Van Arkel's performance of his duties deficient.

Van Arkel contends the fact that equally aged or older Board members assumed some of the duties he previously performed[41] is not evidence age was not a motivating factor in his termination.  He further argues such an assertion is unsound because the Board members did not act to terminate Van Arkel from either of his positions, and because VanderLinden has no authority over Board members who are thus not vulnerable to her alleged age bias.

Van Arkel further asserts VanderLinden's age relative to Van Arkel's is not a legitimate consideration.  First, Van Arkel argues that because VanderLinden did not hire Van Arkel, the "same actor" inference cannot be made.  See Proud v. Stone, 945 F.2d 796, 798 (4th Cir. 1991) (finding that when the hiring decision-maker is the same person who is the termination decision-maker there is a strong inference that the employer was not motivated by a discriminatory factor).  In any case, Van Arkel contends that age similarity or difference is not a dispositive consideration, especially at the summary judgment stage.  See Richter v. Hook-SuperRx, Inc., 142 F.3d 1024, 1032 (7th Cir. 1998) (finding the relative age of the decision-maker not dispositive of discriminatory intent).  Van Arkel contends that the salient point is whether he was replaced by someone "significantly" younger, which he indisputably was.[42]  See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 313 (1996) (concluding

---

[41] Van Arkel asserts the record is unclear as to whether the Board members actually assumed his duties upon deciding not to hire a replacement.  Van Arkel maintains the record supports a lack of activity and follow-up as to Board matters in his absence.

[42] Sease, at 26, was 22 years junior to Van Arkel when she was hired.

that merely being replaced by someone younger is insufficient to establish a prima facie case, but finding "the fact that a replacement is significantly younger than the plaintiff is a far more reliable indicator of age discrimination").

Defendants respond to Plaintiff's resistance by pointing out that Van Arkel's arguments are based on an erroneous premise that Defendants have the burden to not only show a legitimate reason but to present sufficient evidence the reason was not pretextual. As noted above, under McDonnell Douglas, after a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate (not prove) evidence the plaintiff was terminated for a legitimate, nondiscriminatory reason. Hicks, 509 U.S. at 509 (noting this burden is one of production, not persuasion, and "can involve no credibility assessment"). At this point, assuming the defendant is successful, the burden shifts back to plaintiff to show the reason is pretextual or otherwise unworthy of belief. Id. at 507 ("It is important to note that although the McDonnell Douglas presumption shifts the burden of *production* to the defendant, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'") (quoting Burdine, 450 U.S. at 253).

Defendants contend Van Arkel cannot rely on the fact that he and other County officials were happy with his performance to discredit Defendants' proffered reasons, see Brooks v. Ameren UE, 345 F.3d 986, 988 (8th Cir. 2003) (finding the fact that others, including plaintiff, thought his performance was "stellar" is "simply irrelevant, [as] it is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance") (internal quotations

and citations omitted); rather, to carry his burden of showing pretext, Van Arkel must show that VanderLinden, as the acknowledged decision-maker, had a justification that was "unworthy of credence."  Erickson, 271 F.3d at 726 (citing Reeves, 530 U.S. at 143).  In addition, Defendants argue it is not enough to show VanderLinden's justifications were unfounded, but that she knew her decision was unfounded.  Id. at 727 n.4 (citations omitted).

While the relative age of the decision-maker is not *dispositive*, it is *relevant* and a legitimate consideration on the issue of discriminatory intent.  See also Richter, 142 F.3d at 1032 ("While not dispositive, this Court has found it significant that individuals alleged to have discriminated on the basis of age were themselves members of the protected class.") (citations omitted).  Plaintiff's case has some serious faults, especially on the fourth element of a prima facie case.  In fact, Plaintiff is forced to "hang his hat" on an isolated comment made in jest.  The comment did not even reflect on Plaintiff's ability to perform his job, nor was it an indictment of his age.  A stronger argument may be made based on the subsequent hiring of a woman 22 years junior to Van Arkel, though the Court finds it unlikely that a reasonable person could find illegal discrimination on this fact alone.  Thus, Plaintiff struggles to even make out a prima facie case of age discrimination as Van Arkel has no other evidence of discriminatory animus or of a causal connection between his age and his termination.  However, the Court's analysis does not end there.

Defendants have presented a legitimate, nondiscriminatory motive for Van Arkel's termination, the same one provided to Van Arkel when he was terminated

(though Defendants expound upon its meaning here).[43]  The Court finds Plaintiff fails to adequately rebut the proffered justification.  This seems to be the situation where two employees do not get along, but this in no way demonstrates an age-based discriminatory animus on the part of VanderLinden.

While Van Arkel may have been a more than adequate employee as to his job duties, job performance is broader than technical proficiency or compliance; indeed, it encompasses the ability to get along with superiors and co-workers.  Moreover, there is nothing in the law to prevent an otherwise outstanding employee from being terminated for nonprotected reasons.  See Richter, 142 F.3d at 1031-32 ("The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions whcih are unlawfully motivated.") (internal quotations and citations omitted).  That was the case here.  Thus, the Court must dismiss Plaintiff's age discrimination claims.

### b.   Gender Discrimination

Defendants assert Van Arkel's gender discrimination claims should also be dismissed because he cannot establish a prima facie case or demonstrate the proffered

---

[43] There is nothing in the law to prohibit a post-termination explanation of an employer's actions as part of the McDonnell Douglas burden shifting to the defendant to offer a legitimate, nondiscriminatory justification for its actions.  Courts routinely accept post-termination explanations as employers fulfill their burden to provide a legitimate, non-discriminatory motive.  It is then up to the discharged employee to show pretext, i.e., that the proffered reasons are post-hoc fabrications (not credible).  It is self-evident that this type of evidence is allowed, especially in situations involving an at-will employment relationship where the employer is under no obligation to provide any reason pre-termination.

reasons for his termination are pretextual.  Again, the Court will analyze Van Arkel's gender discrimination claim under the McDonnell Douglas framework due to the absence of direct evidence of discrimination.  See Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1156 (8th Cir. 1999).  However, as a male alleging "reverse discrimination", the prima facie case involves the additional step of showing "background circumstances".  Duffy, 123 F.3d at 1036.[44]  In this step, Van Arkel must show "that background circumstances support the suspicion that the defendant is the unusual employer who discriminated against the majority."  Id. at 1036 (quoting Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 67 (6th Cir. 1985)); see also Woods v. Perry, 375 F.3d 671, 674, 675-76 (8th Cir. 2004) (discussing plaintiff's attempt to show the "background circumstances" necessary to sustain his reverse discrimination claim).

As with Plaintiff's age discrimination claims, Defendants contend Van Arkel cannot establish the second or fourth prongs of his prima face case of gender discrimination.  Specifically, Defendants note with respect to the fourth prong that Van Arkel can only demonstrate that approximately one-fifth (1/5) of his duties were assumed by

---

[44] Where the plaintiff offers *direct* evidence of intentional discrimination and the McDonnell Douglas presumption is not relied upon, then "background circumstances" need not be shown.  Notari v. Denver Water Dep't, 971 F.2d 585, 590 (10th Cir. 1992) (finding background circumstances need not be shown if there are specific facts supporting a reasonable inference that "but for plaintiff's status, the challenged decision would not have occurred.").  However, if the plaintiff only has *indirect* evidence of discrimination and relied upon the McDonnell Douglas prima facie case analysis, a showing of "background circumstances" is indeed necessary.  See Duffy, 123 F.3d at 1036, 1037.

a woman while four-fifths (4/5) were assumed by the three male members of
the Board.

Moreover, Defendants assert Van Arkel cannot establish the County is the rare
employer that discriminates against the majority. While all eight of the employees in
the Auditor's office are female, Van Arkel was the only male employee when
Dickerson was the Auditor, and he did not believe she was discriminatory. Addition-
ally, no males applied for the other two positions filled by VanderLinden during
Van Arkel's employment. Finally, VanderLinden interviewed two men and two
women for the Budget Assistant position and only selected the female candidate
because she had the desired budget experience. Defendants maintain that without
more, Van Arkel simply cannot establish a prima facie case of gender discrimination.[45]

---

[45] Van Arkel has admitted he has no evidence of gender discrimination on the
part of the Board. Defendants assert his age discrimination as alleged against the Board
should be dismissed as a matter of law.

Van Arkel argues, however, that lack of direct discriminatory conduct by the
Board does not excuse them from liability. See Bickerstaff v. Vassar Coll., 196 F.3d
435, 450 (2d Cir. 1999) ("[I]mpermissible bias of a single individual at any stage of the
promoting process may taint the ultimate employment decision . . . even absent evi-
dence of illegitimate bias on the part of the ultimate decision maker, so long as the indi-
vidual shown to have the impermissible bias played a meaningful role in the process.")
(internal citations omitted). He contends that VanderLinden's discriminatory animus
tainted the whole process, and that the Board's purported ultimate authority to override
her employment action against Van Arkel was affected by VanderLinden's impermis-
sible bias, "even absent evidence of illegitimate bias on the part of" the Board. Id.

Because the Court ultimately concludes Plaintiff did not adequately rebut
Defendants' proffered justification, the Court need not further address this
alternative argument.

Also, as discussed above, Defendants have asserted legitimate, nondiscrimina-tory reasons for Van Arkels' termination.[46]  To overcome the proffered reason, Van Arkel has asserted that VanderLinden referred to the women in her office as her "girls", and he alleges some of the women received "second chances" consisting of verbal and written reprimands while he was granted no such chances.[47]

Defendants admit that VanderLinden did occasionally refer to her staff as her "girls" or "the girls and Jim".  Defendants do, however, draw attention to the fact that all eight employees in the Auditor's office were women and that while Van Arkel's position was based in the Auditor's office, his primary physical work area was in the Board's offices, which are located on another floor.  Neither Van Arkel nor any of the women in the Auditor's office expressed to VanderLinden that her chosen "term of endearment" was offensive.[48]  As to the disparate treatment alleged, Defendants con-tend Van Arkel was reprimanded, albeit verbally by the Board, when they counseled him to improve his performance.

Van Arkel points out that prior to his termination he was the only male in the Auditor's office, and that now there are none.  He also references VanderLinden's routine mode of referring to her employees as "my girls" or "my girls and Jim".

---

[46] The proffered reason was discussed in the previous section and will not be repeated in this section.

[47] This assertion would raise important questions but is unsupported by the evi-dence in the record before the Court.

[48] Indeed, the diminutive term "girls" could arguably be construed as offensive to women, not men.

Van Arkel claims he felt this was inappropriate and verbalized this to VanderLinden on at least one occasion.[49]  He further claims VanderLinden continued to use the offending terms even with notice Van Arkel felt it was inappropriate.

Van Arkel also asserts there is a difference in the situation under Dickerson with that of VanderLinden as VanderLinden *inherited* him as Budget Officer. VanderLinden then played the pivotal role in terminating his employment and hiring a much younger female as a replacement.  Van Arkel contends Sease was in fact hired to *replace* him, and any assertion to the contrary is merely an attempt to muddy the issue and mislead the Court.  He argues Sease did in fact assume all of the duties he had performed in his capacity as Budget Director.  Van Arkel further contends this demonstrates he and Sease were "similarly situated", as they performed the same duties and could be terminated by VanderLinden.  Van Arkel argues the fact that he occupied a consolidated position is irrelevant.

Again, Van Arkel has problems with even establishing a prima facie case let alone rebutting Defendants' proffered justification.  True, the County hired a woman to replace him as to a portion of his duties.  However, Van Arkel presents no evidence she was less qualified than any of the men interviewed for the position or that she was not qualified to perform the budget duties, thus suggesting a preference for a female.  Sease was hired only to perform the functions Van Arkel performed as Budget Director and

---

[49] Again, this assertion is inadequately supported by the record.  When directly questioned about what he told VanderLinden regarding her use of the phrase "my girls", Van Arkel indicated he told her she might want to be careful.  Further, he responded to the direct question regarding whether he found the term "offensive" by saying he thought it was "odd."

*not* all those duties the consolidated position entailed.  Additionally, Van Arkel has pro-

duced absolutely no evidence of background circumstances that demonstrate the

County was that rare employer that discriminates against the majority.

Moreover, as the Court discussed in conjunction with the age discrimination

claim, Plaintiff is unable to rebut the legitimate, nondiscriminatory reason proffered by

Defendants.  Accordingly, the Court must grant summary judgment on Plaintiff's

gender discrimination claims.

### 2.    Wage Payment Claim

Iowa's Wage Payment Collection Law, codified in Iowa Code Chapter 91A,

requires an employer pay a terminated employee all wages earned up to the time of the

termination not later than the next regular payday.  Iowa Code § 91A.4.  The statute

defines "wages" as compensation owed by an employer for the following:

> a.    Labor or services rendered by an employee, whether determined on
>       a time, task, piece, commission, or other basis of calculation.
> b.    Vacation, holiday, sick leave, and severance payments which are due
>       an employee under an agreement with the employer or under a policy
>       of the employer.

Iowa Code § 91A.2(7).  Defendants contend the County paid Van Arkel all wages due

upon his termination, as required by Chapter 91A, and thus Count IV of the Complaint

must be dismissed.

It is undisputed that Van Arkel was paid all wages for services rendered through

April 15, 2004, as well as two weeks' severance pay.[50]  In addition, Van Arkel was

later paid an amount equal to what he would have been owed had he been terminated

---

[50] The two weeks of severance pay was required by the Warren County
Personnel Policies, as Van Arkel was not given 14 days notice of his termination.

July 1, the date specified in his agreement with Dickerson for his employment to end if he was notified by May 1 that the agreement was not being renewed.

Van Arkel alleges he is owed wages through the date of the Second Amended Complaint, August 27, 2004, or in the alternative, through June 30, 2003, allegedly because notice of his termination was not properly given pursuant to his agreement with former Auditor Dickerson.  Defendants assert, however, that the Iowa Supreme Court has held that "severance payments" are "considerably different from an item of damage predicated on breach of contract for failing to give a specified notice of termination." McLure v. Int'l Livestock Imp. Servs. Corp., 369 N.W.2d 801, 804-05 (Iowa 1985) (stating further that "[a] severance payment is an amount which is granted at contract termination on account of past services, and is usually calculated on the basis of the length of those services").

The McLure decision ultimately rejected the argument that payment arguably due for failing to give proper notice of termination of an employment contract con-stituted severance due under Chapter 91A, concluding instead that the plaintiff has a common law cause of action and did not have a Wage Law claim.  Id.  Defendants assert that Van Arkel's theory on his Wage Law claim is precisely the same argument rejected in McLure, and therefore summary judgment must be granted on this claim.

Plaintiff asserts the McLure decision is not controlling.  In contrast to McLure, Van Arkel contends that his termination has not been effectuated because of Defen-dants' failure to follow the procedure specified in his employment agreement, the

Warren County Personnel Policies, and Chapter 331 of the Iowa Code.[51]  In other words, Van Arkel maintains he continues as a County employee paid on a time basis, and is therefore entitled to payment under Chapter 91A.  He alleges that Defendants attempted, but did not succeed, in terminating him from the Budget Director position and never took *any* action to terminate him from the Assistant to the Board position.

Van Arkel further contends the Auditor's office has no authority to hire and fire employees under the Board and thus could not terminate him from his Assistant to the Board position.  Even if the Auditor had authority to terminate Van Arkel from his position as Budget Officer, he contends this attempt failed because of the County's failure to follow the provisions of his agreement, including the incorporated provisions of Chapter 331 and the County personnel policy.  Thus, Van Arkel contends he continues in his position as a County employee and has advised the Board he is willing and able to do anything they ask (and just because they have not asked does not mean he should not be compensated).  In other words, Van Arkel asserts he should be paid

---

[51] Van Arkel references the decision by the Iowa District Court for Warren County in the matter of Warren County Board of Health v. Warren County Board of Supervisors as support for his argument.  In that case, the state court found that because the Board of Health was required to follow employment practices in compliance with Iowa Code Chapter 91A, and it failed to comply with those requirements, the Board of Health's attempt to terminate an employee was "insufficient to accomplish the task."  Warren County Board of Health v. Warren County Board of Supervisors, No. CV025338 (Warren County Sept. 25, 2001).

However, as this Court has already found supra, Defendants have not violated the terms of the (non-binding) agreement, Chapter 331, or the County's personnel policies.  Additionally, by finding Van Arkel was an at-will employee, he could be terminated at any time for any legal reason without notice.

under Chapter 91A because he is still employed, willing to work, and has not found

other employment, and that he should be paid until properly terminated.

Van Arkel also seeks damages pursuant to Iowa Code section 91A.8, which

provides as follows in relevant part:

> When it has been shown that an employer has intentionally failed to pay
> an employee wages or reimburse expenses pursuant to § 91A.3, whether
> as the result of a wage dispute or otherwise, the employer shall be liable to
> the employee for any wages or expenses that are so intentionally failed to
> be paid or reimbursed, plus liquidated damages, court costs and any attor-
> ney's fees incurred in recovering the unpaid wages and determined to
> have been usual and necessary.

Iowa Code § 91A.8.  Van Arkel contends he is entitled to wages and damages under

section 91A, and Defendants' motion for summary judgment on this claim must

be denied.

Defendants counter that Plaintiff ignores the definition of "wages", which

includes compensation for "[l]abor or services rendered by an employee."  Iowa Code

§ 91A.2(7).  Because Van Arkel admits he has performed no services or labor for

Defendants since April 15, 2002, Defendants argue no wages can be due under

Chapter 91A.

The Court finds this claim is rationally unsupportable and necessarily fails as a

matter of law.  Van Arkel was terminated as an at-will employee and received payment

for all services he rendered (and some he did not, in an effort to meet the terms of his

claimed agreement with Dickerson).  The Court finds that Van Arkel has received *all*

wages for *all services rendered*, which is all Chapter 91A guarantees.  The Court notes

65

that, at the least, Van Arkel had constructive notice of his discharge, and it is more creative than persuasive to now argue he is still employed by the County. Thus, summary judgment is warranted on Van Arkel's claim under Chapter 91A.

### 3.    Breach of Contract Claim

The Court previously discussed Van Arkel's breach of contract claim in the context of Plaintiff's motion for summary judgment on this count. Defendants also seek summary judgment on this claim and repeat many of the same arguments in support of summary judgment in their favor that they used in resistance to Plaintiff's motion. As the Court has entered findings above on the dispositive issues, it need not repeat those arguments.

As provided <u>supra</u>, the Court finds the employment agreement entered into by Dickerson and Van Arkel was never ratified by the Board, even though Plaintiff belatedly provided the Court some evidence that the County was presented with and reviewed the agreement. The Board took no action to actually approve and ratify that agreement, as evidenced by the Board minutes and the express terms of the resolution adopted. Thus, there is no valid and binding contract in effect, and without a contract, Plaintiff's breach of contract necessarily fails as a matter of law. The Court also determined the County personnel policies do not give rise to a contractual relationship between Van Arkel and the Defendants. Accordingly, the Court finds summary judgment in favor of Defendants is appropriate on this claim.

### 4.   Iowa Code Chapter 331 Claim

Again, the Court issued findings on issues dispositive to this claim in the context of Van Arkel's motion for summary judgment.  Like the breach of contract claim, Defendants have moved to dismiss Plaintiff's Chapter 331 claim, and the Court's findings warrant dismissal in their favor on the issue.  The Court held <u>supra</u> that Chapter 331 does not apply under the employment agreement or by the terms of the statute itself.  Thus, Plaintiff cannot invoke and Defendants cannot be held liable for violating its provisions.  As a result, the Court must grant summary judgment on this claim.

### CONCLUSION

For the foregoing reasons, the Court hereby **denies** Plaintiff's Motion for Partial Summary Judgment (Clerk's No. 31).  In addition, for the reasons stated herein, the Court hereby **grants** Defendants' Motion for Summary Judgment (Clerk's No. 30, 33). The Clerk of Court is directed to enter judgment in favor of the Defendants and against the Plaintiff.

**IT IS SO ORDERED.**

Dated this 12th day of April, 2005.

JAMES E. GRITZNER, JUDGE
UNITED STATES DISTRICT COURT